760 S.E.2d 814

**The STATE, Respondent,**

v.

**Erick Eton HEWINS, Appellant.**

**Appellate Case No. 2012–210306.**

**No. 27415.**

Supreme Court of South Carolina.

Heard March 18, 2014.

Decided July 16, 2014.

Rehearing Denied Aug. 6, 2014.

96

98

Appellate Defender Carmen Vaughn Ganjehsani, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia, for Respondent.

Justice BEATTY.

Erick Hewins appeals his conviction for possession of crack cocaine. Hewins contends the circuit court judge erred in ruling he was collaterally estopped from challenging the search of his vehicle, which precipitated the drug charge, because Hewins waived any challenge when he was convicted in municipal court of an open container violation resulting from the same search. We hold the conviction in municipal court had no preclusive effect on Hewins's ability to litigate his motion to suppress in circuit court. Moreover, we find the drug evidence should have been suppressed because it was discovered during an unlawful search. Accordingly, we reverse Hewins's conviction.

## I. Factual/Procedural History

On September 15, 2009 at approximately 11:45 p.m., Officer Charles Cothran of the Greenville Police Department was patrolling the area of Main Street and Stone Avenue when he observed a gold Cadillac make a left turn using a "non-turning lane." As a result of the improper turn, Officer Cothran signaled for the vehicle to stop and Hewins pulled over into a nearby parking lot. Officer Cothran testified that earlier in the evening he had seen Hewins driving this vehicle on two occasions in a "high drug area."

Officer Cothran approached the vehicle and requested that Hewins provide his driver's license, proof of insurance, and vehicle registration. According to Officer Cothran, Hewins was "extremely nervous," spoke with a "quivering" voice, and was rapidly breathing. Due to Hewins's behavior, Officer Cothran requested a backup unit. Because Hewins was unable to locate his proof of insurance or vehicle registration, Officer Cothran returned to his patrol car and searched the computer database for this information and confirmed the vehicle was registered to Hewins.

As Officer Cothran was writing a warning citation, Officer Michael Loftis, a K–9 officer, arrived at the location. After Officer Cothran completed writing the warning citation, he returned to give it to Hewins. When he approached the vehicle, he noticed that Hewins remained nervous and "had not calmed down" despite the fact that he was not being given

a traffic ticket. Based on this behavior, Officer Cothran asked Hewins to exit the vehicle for safety reasons. He then conducted a pat down of Hewins and questioned him as to whether he had any guns, drugs, or explosives. Officer Cothran stated Hewins quickly responded that he did not have drugs and continued to exhibit nervous behaviors. Officer Cothran indicated this response made him suspicious. As a result, he asked Hewins for consent to search the vehicle. When Hewins refused, Officer Loftis proceeded to walk his drug-detection dog around the vehicle. After Officer Loftis secured the dog, he informed Officer Cothran that the dog had "alerted" to the driver's side door. In turn, Officer Cothran conducted a search of the vehicle. The search of the center armrest console revealed a mini-bottle of vodka that had been opened and a Tylenol bottle containing two, small "rock-like white pebbles." A field test of the substance indicated the presence of cocaine. Officer Cothran arrested Hewins for possession of crack cocaine [1] and issued him a ticket for the open container violation.[2]

On October 8, 2009, Hewins appeared in municipal court and was convicted of the open container charge. The municipal court sentenced Hewins to time served and ordered the payment of a fine in the amount of $262.50. Based on his misunderstanding that Hewins had been convicted of posses-

---

1. S.C.Code Ann. § 44–53–375(A) (Supp.2009) ("A person possessing or attempting to possess less than one gram of methamphetamine or cocaine base, as defined in Section 44–53–110, is guilty of a misdemeanor and, upon conviction for a first offense, must be imprisoned not more than three years or fined not more than five thousand dollars, or both."). Because a 2010 amendment rewrote section 44–53–375, we have cited to the code section in effect at the time of the offense.

2. S.C.Code Ann. § 61–6–4020 (2009) ("A person who is twenty-one years of age or older may transport lawfully acquired alcoholic liquors to and from a place where alcoholic liquors may be lawfully possessed or consumed; but if the cap or seal on the container has been opened or broken, it is unlawful to transport the liquors in a motor vehicle, except in the luggage compartment or cargo area. A person who violates this section is guilty of a misdemeanor and, upon conviction, must be fined not more than one hundred dollars or imprisoned for not more than thirty days."). We note that section 61–6–4020 was amended in 2011 to restructure the provisions of the statute and to clarify what constitutes the cargo area of a vehicle. Because this amendment took effect after the date of the offense, we have cited to the code section in effect at the time of the offense.

sion of crack cocaine in municipal court, Officer Cothran authorized the destruction of the drug evidence.

On May 4, 2010, a Greenville County grand jury indicted Hewins for possession of crack cocaine. Just prior to the start of the trial, Hewins moved to suppress the drug evidence on the ground the search was unlawful. Although counsel for Hewins admitted the initial traffic stop was valid, he asserted the purpose of the stop was concluded after Officer Cothran issued a warning citation for the traffic offense. Counsel maintained that once the traffic stop was concluded any further detention or search was unlawful.

In response, the solicitor asserted Hewins was collaterally estopped from challenging the propriety of the search because he had been convicted in municipal court for an offense that emanated from the same search. The solicitor explained that the failure to challenge the search in municipal court constituted a waiver by Hewins as to any further issue regarding the search. In support of this position, the solicitor relied on the holding in *State v. Snowdon*, 371 S.C. 331, 638 S.E.2d 91 (Ct.App.2006), *cert. dismissed as improvidently granted*, 381 S.C. 171, 672 S.E.2d 108 (2009).

In *Snowdon*, the defendant was arrested for breach of the peace. *Id.* at 332, 638 S.E.2d at 92. During a search incident to the arrest, an officer discovered a small amount of marijuana in the defendant's wallet. *Id.* The defendant was charged with breach of the peace and possession of marijuana. *Id.* After he pled guilty to breach of the peace in magistrate's court, the defendant sought to suppress the introduction of the marijuana during his circuit court trial. *Id.* at 333, 638 S.E.2d at 92. The circuit court determined that the defendant's guilty plea in magistrate's court precluded him from contesting the legality of his arrest and, *a fortiori*, the search incident thereto. *Id.* The defendant was convicted of possession of marijuana and sentenced to one year in prison. *Id.*

On appeal, the Court of Appeals affirmed. *Id.* at 334, 638 S.E.2d at 93. In so ruling, the court found the defendant, by having pled guilty to the breach of the peace charge, waived any objection he may have had to assert constitutionally based violations attendant to his initial arrest and the legal consequences flowing therefrom. *Id.* at 333, 638 S.E.2d at 93.

Additionally, the court found the defendant was collaterally estopped from relitigating the issue of the validity of his arrest. *Id.* at 334, 638 S.E.2d at 93. Because the defendant had pled guilty to breach of the peace, the court found the issue of whether there was probable cause to arrest him for that offense was necessarily determined in the magistrate court proceeding. *Id.* Thus, the court concluded the doctrine of collateral estoppel prevented the defendant from raising that issue again at his trial for possession of marijuana. *Id.*

Counsel for Hewins disputed the applicability of *Snowdon,* arguing that Hewins did not enter a guilty plea in municipal court. To counter this assertion, the solicitor presented testimony from the records custodian for the City of Greenville Municipal Court. Although the Uniform Traffic Ticket indicated Hewins appeared for a trial, the custodian testified her computer records reflected that Hewins pled guilty.

Counsel for Hewins then resumed his argument and reiterated that *Snowdon* was not applicable. Counsel explained that, unlike the related offenses in *Snowdon,* the magistrate court conviction for an open container violation was "a completely separate case" from the possession of crack cocaine offense. Specifically, counsel pointed out that Hewins was not contesting a search incident to an arrest but, rather, a search following the issuance of a warning citation. Finally, counsel claimed there was no evidence that Hewins was represented by counsel during the municipal court proceeding.

At the conclusion of the hearing, the judge granted the State's motion based on *Snowdon.* Ultimately, the jury convicted Hewins of possession of less than one gram of crack cocaine. The trial judge sentenced Hewins to one year in prison. After Hewins appealed to the Court of Appeals, this Court certified the appeal pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

## II. Standard of Review

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001) (citations omitted). "We are bound by the trial court's factual findings unless they are clearly erroneous." *Id.* "This same standard of review ap-

plies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases." *Id.* The admission or exclusion of evidence is left to the sound discretion of the trial court, and the court's decision will not be reversed absent an abuse of discretion. *State v. Pagan,* 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). An abuse of discretion occurs when the decision of the trial court is based upon an error of law or upon factual findings that are without evidentiary support. *Id.*

## III. Discussion

### A. Arguments

Hewins contends the circuit court judge erred in ruling he was precluded from seeking the suppression of the crack cocaine based on *Snowdon.* In support of this contention, Hewins maintains *Snowdon* is not controlling as it is factually distinguishable. Specifically, he asserts there is no evidence that definitively proves he pled guilty in municipal court as the notation on the Uniform Traffic Ticket indicates he went to trial and there was a verdict of guilty. Moreover, Hewins disputes the application of the doctrine of collateral estoppel as the legality of the search was not at issue or actually litigated during the municipal court proceeding.

Additionally, because there is no evidence that Hewins had the benefit of counsel for the municipal court proceeding, he asserts this uncounseled conviction should not have been used against him in circuit court. Citing *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) and its progeny,[3] Hewins claims any use of his uncounseled municipal court conviction violated the Sixth Amendment.[4]

---

3. *See Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (holding that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial"); *see also Alabama v. Shelton,* 535 U.S. 654, 658, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002) (finding "a suspended sentence that may 'end up in the actual deprivation of a person's liberty' may not be imposed unless the defendant was accorded 'the guiding hand of counsel' in the prosecution for the crime charged" (quoting *Argersinger,* 407 U.S. at 40, 92 S.Ct. 2006)).

4. The circuit court judge did not rule on this issue. Thus, we find it is not preserved for our review. *See Wilder Corp. v. Wilke,* 330 S.C. 71,

## B. Analysis

### 1. *Snowdon* is not dispositive

We hold the circuit court judge erred in relying on *Snowdon* as it is factually distinguishable and, thus, not dispositive of the instant case. Initially, we find that Hewins did not plead guilty as did the defendant in *Snowdon*. Instead, Hewins was convicted in municipal court after a trial. Although there is conflicting testimony on this point, the only official court record is the Uniform Traffic Ticket. This document reveals the following: (1) a trial was scheduled for October 8, 2009, (2) Hewins appeared for this trial, (3) the trial was conducted by a trial officer, and (4) a verdict of guilty was entered after the trial.

However, even if Hewins pled guilty in municipal court, we find there are significant differences between the facts of *Snowdon* and the instant case. In *Snowdon*, the defendant was arrested for breach of the peace. *Snowdon*, 371 S.C. at 332, 638 S.E.2d at 92. During a search incident to the arrest, an officer discovered a small amount of marijuana in the defendant's wallet. *Id.* The defendant was charged with breach of the peace and possession of marijuana. *Id.* After he pled guilty to breach of the peace in magistrate's court, the defendant sought to suppress the introduction of the marijuana during his circuit court trial. *Id.* at 333, 638 S.E.2d at 92. The Court of Appeals found that Snowdon, having pled guilty to breach of peace, "waived any objection he may have had, and [could not], therefore, assert constitutionally based violations attendant to his initial arrest and the legal consequences flowing therefrom." *Id.* at 333, 638 S.E.2d at 93.

In *Snowdon*, the Court of Appeals viewed the two offenses as inextricably linked. Specifically, the breach of the peace arrest precipitated the search, which revealed evidence that formed the basis of the marijuana charge. By failing to challenge the initial arrest, the court found Snowdon waived any challenge to the consequences stemming from this arrest.

76, 497 S.E.2d 731, 733 (1998) (holding an issue must have been raised to and ruled upon by the trial court in order to be preserved for appellate review).

In contrast, the search in the instant case was not incident to an arrest as it followed the officer's issuance of a traffic citation. Furthermore, the open container charge was completely unrelated to the drug possession charge as the discovery of the vodka bottle did not precipitate the discovery of the drug evidence.

## 2. Preclusive Effect of a Conviction and Collateral Estoppel

Having concluded that *Snowdon* is not dispositive, the question becomes whether a conviction in a separate criminal proceeding or the doctrine of collateral estoppel precludes a defendant from subsequently challenging a search that uncovered evidence relating to the two separate offenses?

### a. Implications of the Entry of a Valid Guilty Plea

██ It is well-established that a plea of guilty, knowingly and voluntarily entered, generally acts as a waiver of all non-jurisdictional defects and defenses, including challenges regarding constitutional issues. *Gibson v. State*, 334 S.C. 515, 514 S.E.2d 320 (1999); *State v. Munsch*, 287 S.C. 313, 338 S.E.2d 329 (1985).

Based on this principle, most jurisdictions take the position that a person who pleads guilty waives all non-jurisdictional objections to the proceeding, "including objections to the manner in which evidence against him has been gathered." A.E. Korpela, Annotation, *Plea of Guilty as Waiver of Claim of Unlawful Search and Seizure*, 20 A.L.R.3d 724, § 2[a] (1968 & Supp.2014) (collecting state and federal cases discussing whether a plea of guilty constitutes a waiver of an unlawful search and seizure as a ground for attacking the conviction). Thus, by pleading guilty, a defendant is precluded from attempting to vitiate the conviction by allegations that an unlawful search and seizure precipitated the charged offense.

 Stated another way, the waiver that results from the entry of a guilty plea is confined to the offense that is the subject of the plea. *See Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (recognizing that a guilty plea conclusively establishes the factual predicate for the offense to which the defendant is pleading guilty); 22 C.J.S. *Criminal*

*Law* § 517 (Supp.2013) ("[B]roadly stated, where the accused pleads guilty to a charged offense, he or she may not thereafter raise independent claims relating to the deprivation of constitutional rights that antedate the plea."). Thus, by implication, a defendant who pleads guilty waives any assertion of an unlawful search that precipitated the offense to which he pled guilty. Accordingly, even if Hewins pled guilty to the open container violation, his plea would have constituted a waiver of any challenge he may have had to that offense but could not be extended to constitute a waiver of a challenge to the charge of possession of crack cocaine.

Because a guilty plea in municipal court would have had no preclusive effect on Hewins's ability to litigate his motion to suppress in circuit court, we must next determine whether the doctrine of collateral estoppel was applicable.

### b. Doctrine of Collateral Estoppel

"Collateral estoppel, also known as issue preclusion, prevents a party from relitigating an issue that was decided in a previous action, regardless of whether the claims in the first and subsequent lawsuits are the same." *Carolina Renewal, Inc. v. S.C. Dep't of Transp.*, 385 S.C. 550, 554, 684 S.E.2d 779, 782 (Ct.App.2009). "The party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Id.* " 'While the traditional use of collateral estoppel required mutuality of parties to bar relitigation, modern courts recognize the mutuality requirement is not necessary for the application of collateral estoppel where the party against whom estoppel is asserted had a full and fair opportunity to previously litigate the issue.' " *Id.* (quoting *Snavely v. AMISUB of S.C., Inc.*, 379 S.C. 386, 398, 665 S.E.2d 222, 228 (Ct.App.2008)). "The doctrine of collateral estoppel should not be rigidly or mechanically applied." *Id.* at 555, 684 S.E.2d at 782. "Thus, even if all the elements for collateral estoppel are met, when unfairness or injustice results or public policy requires it, courts may refuse to apply it." *Id.*

Without explanation, this civil doctrine was applied in the criminal context by our Supreme Court in 1942. *See State v.*

*Brown,* 201 S.C. 417, 23 S.E.2d 381 (1942) (holding defendant was estopped from relitigating the value of stolen goods in magistrate court where circuit court determined value and remanded to magistrate court based on that determination). In *Snowdon,* the Court of Appeals merely referenced *Brown* in a footnote to support the proposition that "[c]ollateral estoppel can be used in a criminal proceeding." *Snowdon,* 371 S.C. at 334 n. 2, 638 S.E.2d at 93 n. 2.

Given the limited precedent in this state regarding the application of collateral estoppel in criminal proceedings, we have looked to other sources for guidance on this issue. Although the doctrine of collateral estoppel originally developed in civil cases, it has been applied in criminal proceedings. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe,* the United States Supreme Court explained, " '[c]ollateral estoppel' is an awkward phrase, but stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. 1189. In analyzing this doctrine, the Court recognized that collateral estoppel in the criminal context is derived from the Fifth Amendment Double Jeopardy Clause, which forbids any person from being "twice put in jeopardy of life or limb." *Id.* at 442, 90 S.Ct. 1189. ("The question is no longer whether collateral estoppel is a requirement of due process, but whether it is a part of the Fifth Amendment's guarantee against double jeopardy.").

Against this background, the Court held that a defendant in a criminal case may assert collateral estoppel by relying on an acquittal in a first prosecution to bar litigation of those facts in a subsequent prosecution for a different offense. *Id.* at 443, 90 S.Ct. 1189. The Court, however, noted that "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id.* at 444, 90 S.Ct. 1189.

The rule established in *Ashe* is normally invoked by a defendant to prevent the State from relitigating an issue that has been determined in the defendant's favor. *See* E.H.

Schopler, Annotation, *Modern Status of Doctrine of Res Judicata in Criminal Cases*, 9 A.L.R.3d 203 (1966 & Supp.2014) (collecting state and federal cases concerning the question of whether and when a judgment on the merits in a criminal prosecution may be asserted as res judicata or collateral estoppel in a subsequent criminal prosecution); 1 Wharton's Criminal Law § 74 (15th ed. Supp.2013) ("Collateral estoppel, a branch of the broader principle of res judicata, is applicable in criminal prosecutions and bars relitigation between the same parties of an issue determined at a prior trial.").

"Courts differentiate between offensive and defensive use of collateral estoppel." Kristin C. Dunavant, Comment, *Criminal Procedure—State of Tennessee v. Scarbrough: Precluding The Application of Offensive Collateral Estoppel in Criminal Cases*, 37 U. Mem. L.Rev. 639, 639 (Spring 2007). "While offensive collateral estoppel bars the criminal defendant from relitigating an issue determined in a previous action, defensive collateral estoppel prohibits the prosecution from relitigating an issue determined in a previous action." *Id.*

When the prosecution invokes collateral estoppel against the defendant, its use is "sometimes restricted by concerns such as fairness to the defendant." Anne Bowen Poulin, *Prosecution Use of Estoppel and Related Doctrines in Criminal Cases: Promoting Consistency, Tolerating Inconsistency*, 64 Rutgers L.Rev. 409, 410 (Winter 2012). Specifically, "the State's use of offensive collateral estoppel against a defendant has raised the issue of whether it violates the defendant's Sixth Amendment right to a jury trial." Dunavant, *supra* at 642. "The constitutional argument is that if a court allows the State to invoke offensive collateral estoppel against a criminal defendant, effectively banning the defendant from litigating every element of his offense in front of the jury in a subsequent action, the subsequent jury would not be able to consider all of the facts." *Id.* "Consequently, the use of offensive collateral estoppel would prevent the jury from making every finding necessary to the judgment in the subsequent suit and thus would violate the defendant's constitutional right to a jury trial." *Id.*

Additionally, it has been asserted that "the application of offensive issue preclusion by the government violates the

defendant's Fifth Amendment right to due process." Michelle S. Simon, *Offensive Issue Preclusion in the Criminal Context: Two Steps Forward, One Step Back*, 34 U. Mem. L.Rev. 753, 779 (Summer 2004). "Under the Due Process Clause, a criminal defendant has the right to a determination by a jury of whether the prosecution has proved every element of the crime charged beyond a reasonable doubt." *Id.* "By finding that an element of the crime has been conclusively proven, the argument is that the prosecution is relieved of its burden of proof." *Id.* "Not only is the prosecution relieved of its burden of proof, but the burden shifts to the defendant to overcome the prejudice of the jury created by the knowledge of the previous determination." *Id.*

Given the significant constitutional issues raised by the use of offensive collateral estoppel, it is questionable that the policy reasons used to support issue preclusion in civil cases justify the use of the doctrine in the criminal context. *Id.* at 780. Specifically, "[t]he notion of judicial efficiency and finality has been invoked in civil trials to support the use of issue preclusion since the prompt resolution of claims and finality are desirable goals in civil litigation." *Id.* However, it would appear that "the efficiencies of issue preclusion pale in comparison to the importance of upholding a criminal defendant's right to vigorously defend himself and protect his liberty." *Id.*

In view of these constitutional and policy concerns, the majority of federal courts have prohibited the prosecution from invoking collateral estoppel against a defendant. *See United States v. Pelullo*, 14 F.3d 881, 890 (3d Cir.1994) (denying the use of offensive collateral estoppel in a criminal context because it would violate a defendant's right to a jury trial; noting, "Instances of invoking collateral estoppel against the defendant have been rare, though not unheard of"); *United States v. Smith–Baltiher*, 424 F.3d 913 (9th Cir.2005) (rejecting the use of offensive collateral estoppel in criminal context); *United States v. Gallardo–Mendez*, 150 F.3d 1240 (10th Cir.1998) (prohibiting prosecution's use of a guilty plea to collaterally estop a defendant from relitigating an issue in a subsequent criminal proceeding because it would be contrary to the Due Process Clause); *United States v. Harnage*, 976 F.2d 633 (11th Cir.1992) (precluding the use of offensive

collateral estoppel because it would defeat the goal of judicial efficiency).

The majority of state courts that have considered this issue have also precluded the prosecution from invoking collateral estoppel against a defendant. *See Gutierrez v. People*, 24 Cal.App.4th 153, 29 Cal.Rptr.2d 376 (1994) (holding that defendant's right to a fair trial prevented the State from asserting collateral estoppel to bar defendant from litigating issues of identity and intent based on resolution of those issues in prior trial resulting in final judgment of conviction for attempted murder of the same victim); *State v. Stiefel*, 256 So.2d 581, 585 (Fla.Dist.Ct.App.1972) (finding collateral estoppel was inapplicable in subsequent prosecution originating out of the same events that led to a conviction for driving while intoxicated because due process principles "assure an accused a jury trial on all issues relating to each element of a given criminal charge"); *State v. Allen*, 423 Md. 208, 31 A.3d 476 (2011) (holding prosecution's use of offensive collateral estoppel to establish an essential element of a charged offense in a criminal case violates a defendant's right to trial by an impartial jury and the presumption of innocence); *People v. Goss*, 446 Mich. 587, 521 N.W.2d 312 (1994) (holding that neither collateral estoppel nor res judicata could be applied to conclusively establish underlying felony, as a matter of law, in retrial of felony-murder conviction); *State v. Johnson*, 134 N.H. 498, 594 A.2d 1288 (1991) (concluding that doctrine of collateral estoppel could not be applied offensively in perjury prosecution so as to preclude litigation of primary substantive issue involving a specific finding of fact made by a jury in a prior criminal trial against the defendant); *State v. Ingenito*, 87 N.J. 204, 432 A.2d 912, 918–19 (1981) (concluding that "collateral estoppel, applied affirmatively against a defendant in a criminal prosecution, violates the right to trial by jury in that not only does it seriously hobble the jury in its quest for truth by removing significant facts from the deliberative process, but it constitutes a strong, perhaps irresistible, gravitational pull towards a guilty verdict"); *State v. Scarbrough*, 181 S.W.3d 650 (Tenn.2005) (holding the prosecution could not invoke the doctrine of offensive collateral estoppel to establish an essential element of a charge in a criminal case).

### c. Application of Collateral Estoppel
### to a Motion to Suppress

As can be seen by the above citations, most courts have considered whether the prosecution's use of offensive collateral estoppel violates a defendant's right to a jury trial. Thus, although these cases are instructive, they are not dispositive of the narrow question presented in the instant case, which is whether a prior conviction may be used against a defendant in a pre-trial motion to suppress?

Without question, the proceedings are different as the use of collateral estoppel in this posture affects a judge's pre-trial ruling and does not necessarily eliminate a jury's consideration of substantive elements of the indicted offense. Accordingly, some courts have declined to adopt a blanket prohibition of the offensive use of collateral estoppel in this context, provided that the requirements of collateral estoppel are met. 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.2(g) (5th ed. Supp.2013); Poulin, *supra* at 432–40.

Although these authorities identify *five* requirements for the application of the doctrine of collateral estoppel, we find the requirements are consistent with the *three* factors applied by our appellate courts in civil cases. *See Commonwealth v. Cabrera,* 449 Mass. 825, 874 N.E.2d 654, 658 (2007) ("Five requirements must be met for collateral estoppel to apply *in the context of a suppression motion:* (1) the issues in the two proceedings must be identical; (2) the party estopped must have had sufficient incentive to litigate the issue fully and vigorously; (3) the party estopped must have been a party to the previous litigation; (4) the applicable law must be identical in both proceedings; and (5) the first proceeding must have resulted in a final judgment on the merits such that the defendant had sufficient incentive and an opportunity to appeal." (footnote omitted) (emphasis added)).

After considering the constitutional and policy issues raised by the use of collateral estoppel in the criminal context, we decline to adopt a blanket prohibition of the State's use of offensive collateral estoppel. Significantly, at oral argument, counsel for Hewins stated that this was not the requested relief and in fact noted instances for which the doctrine's

application would be permissible. We emphasize, however, that these instances would be extremely rare.

### d. Application of Offensive Collateral Estoppel to the Instant Case

 Applying this doctrine to the facts of the instant case, we find Hewins should not have been precluded from litigating his motion to suppress in circuit court because the State failed to establish the requisite factors.

Initially, we note there is no evidence in the record that the issue regarding the constitutionality of the search was actually litigated or directly determined in municipal court. Moreover, even though one search revealed evidence for the open container violation and the drug offense, the suppression issue in the drug case was not necessary to support a conviction in the open container case. Finally, given the minimal penalty for an open container violation, Hewins had little incentive to pursue a suppression motion as he was sentenced to time served and ordered to pay a fine.

 Because the State failed to demonstrate each element of the doctrine of collateral estoppel, we find Hewins should not have been precluded from litigating the suppression issue in circuit court. *See United States v. Gregg,* 463 F.3d 160 (2d Cir.2006) (holding defendant's guilty plea to state charge of criminal impersonation did not waive any Fourth Amendment challenges to the subsequent federal felon-in-possession charge stemming from the same stop and arrest); *United States v. Arreola–Beltran,* 827 F.Supp.2d 1188 (D.Idaho 2011) (applying five-factor test and finding state court's denial of defendant's motion to suppress did not collaterally estop federal district court from considering motion to suppress the same evidence); *see also People v. Griffin,* 117 Ill.App.3d 177, 72 Ill.Dec. 750, 453 N.E.2d 55 (1983) (concluding trial court erred in refusing to grant defendant a hearing on his motion to suppress on the ground that his plea of guilty in prior prosecution precluded appeal from denial of motion in that prosecution, but finding error was harmless in light of overwhelming evidence of defendant's guilt). Accordingly, we

 

reverse the decision of the circuit court judge.[5]

## 3. Merits of the Motion to Suppress

Given our standard of review, the normal procedural course would be to remand this case to the circuit court to conduct a hearing on Hewins's motion to suppress. *See State v. Tindall*, 388 S.C. 518, 521, 698 S.E.2d 203, 205 (2010) ("On appeals from a motion to suppress based on Fourth Amendment grounds, this Court applies a deferential standard of review and will reverse if there is clear error. However, this deference does not bar this Court from conducting its own review of the record to determine whether the trial judge's decision is supported by the evidence." (citation omitted)). In the interest of judicial economy, we have decided to address the merits of this issue as the parties did in their briefs and at oral argument.[6]

---

5. Additionally, we disagree with State's contention that the law of the case doctrine precluded Hewins from challenging the admission of the drug evidence in the circuit court proceeding. We find the State's reliance on this doctrine is misplaced as it is a discretionary appellate doctrine with no preclusive effect on successive trial proceedings. *See Hudson ex rel. Hudson v. Lancaster Convalescent Ctr.*, 407 S.C. 112, 119, 754 S.E.2d 486, 490 (2014) ("Under the law of the case doctrine, a party is precluded from re-litigating issues decided in a lower court order, when the party voluntarily abandons its appeal of that order.").

6. The sole basis for the dissent's position is its disagreement with our decision "to address the suppression motion on the merits, as it was not ruled on below." Interestingly, the dissent has not consistently expressed this aversion to addressing issues that have not been ruled on. In fact, the dissent has authored at least two decisions and agreed with the Court on several occasions to analyze the merits of an issue despite preservation problems. *See State v. Daniels*, 401 S.C. 251, 256, 737 S.E.2d 473, 475 (2012) ("Although the issue is not preserved, we instruct the trial judge to remove any suggestion from his general sessions charge that a criminal jury's duty is to return a verdict that is 'just' or 'fair' to all parties."); *Wachovia Bank of S.C. v. Player*, 341 S.C. 424, 428, 535 S.E.2d 128, 130 (2000) (reversing the decision of the Court of Appeals' holding that master lacked jurisdiction, but addressing the merits of petitioner's appeal "in the interest of judicial economy"); *see also Woodson v. DLI Props., L.L.C.*, 406 S.C. 517, 528 n. 10, 753 S.E.2d 428, 434 n. 10 (2014) ("While remand to the court of appeals is appropriate, in the interest of judicial economy, we address the merits of whether summary judgment in favor of Respondents was proper.") (Pleicones, J., concurring); *State v. Kromah*, 401 S.C. 340, 349, 737 S.E.2d 490, 495 (2013) (finding issue preserved and address-

114

 The Fourth Amendment to the United States Constitution grants citizens the right to be secure against unreasonable search and seizure. U.S. Const. amend. IV. A police officer may "stop and briefly detain a person for investigative purposes" if he "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'...." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "Temporary detention of an individual in the course of a routine traffic stop constitutes a Fourth Amendment seizure, but where probable cause exists to believe that a traffic violation has occurred, such a seizure is reasonable per se." *Tindall,* 388 S.C. at 521, 698 S.E.2d at 205. "In carrying out a routine traffic stop, a law enforcement officer may request a driver's license and vehicle registration, run a computer check, and issue a citation." *Id.* (citing *United States v. Sullivan,* 138 F.3d 126, 131 (4th Cir.1998)). "Any further detention for questioning is beyond the scope of the stop and therefore illegal unless the officer has reasonable suspicion of a serious crime." *Id.*

 Recently, this Court addressed the test for determining whether reasonable suspicion exists in the context of a traffic stop. *State v. Provet,* 405 S.C. 101, 747 S.E.2d 453 (2013). "The test whether reasonable suspicion exists is an objective assessment of the circumstances; the officer's subjective motivations are irrelevant." *Id.* at 108, 747 S.E.2d at 457 (citing *Ohio v. Robinette,* 519 U.S. 33, 38, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)). "Violation of motor vehicle codes provides an officer reasonable suspicion to initiate a traffic stop." *Id.* (citing *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). "A traffic stop supported by reasonable suspicion of a traffic violation remains valid until the purpose of the traffic stop has been completed." *Id.* (citing *Arizona v. Johnson,* 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009)). "The officer may not extend the duration of a traffic stop in order to question the motorist on unrelated matters unless he possesses reasonable suspicion that warrants an additional seizure of the motorist." *Id.*

---

ing the merits of the issue "in the interest of judicial economy") (Pleicones, J., concurring).

(citing *United States v. Sullivan,* 138 F.3d 126, 131 (4th Cir.1998)). "Notwithstanding that an officer may not lawfully extend the duration of a traffic stop in order to engage in off-topic questioning, this rule does not limit the scope of the officer's questions to the motorist during the traffic stop." *Id.* at 108–09, 747 S.E.2d at 457. Moreover, "[t]he officer's observations while conducting the traffic stop may create reasonable suspicion to justify further search or seizure." *Id.* at 109, 747 S.E.2d at 457.

In the instant case, Hewins does not challenge the legality of the initial traffic stop. Rather, he asserts Officer Cothran exceeded the scope of the stop. We agree as the evidence does not support a finding that Officer Cothran had reasonable suspicion of criminal activity to extend the duration of the traffic stop and conduct the search.

Officer Cothran stopped Hewins for making an improper turn. He then obtained Hewins's driver's license but not his vehicle registration or proof of insurance. During this initial contact, Officer Cothran informed Hewins that he would issue a warning citation. Officer Cothran returned to his patrol car to run a check on Hewins's license. After confirming that the vehicle was registered to Hewins, Officer Cothran completed a warning citation.

At this point, the purpose of the traffic stop was fulfilled except for presenting the warning citation to Hewins. Officer Cothran, however, proceeded to order Hewins out of the vehicle and conduct a pat-down search. Following the pat down, Officer Cothran continued to question Hewins as to whether he had any guns, drugs, or explosives. When Hewins denied the presence of any drugs and refused to consent to a search, Officer Cothran asked Officer Loftis to walk his drug-detection dog around the vehicle. After the dog "alerted" to the driver's side of the vehicle, Officer Cothran proceeded to search the vehicle.

We find Officer Cothran's continued detention of Hewins exceeded the scope of the traffic stop and constituted an additional seizure for purposes of the Fourth Amendment. However, our analysis does not end as the question becomes whether Officer Cothran reasonably suspected a serious crime at the point he completed the warning citation.

According to Officer Cothran, he decided to conduct the pat down, continue questioning, and deploy the drug-detection dog based on the following information: (1) earlier in the evening he had seen Hewins drive in a known drug area; (2) Hewins remained nervous despite being given a warning citation rather than a traffic ticket; and (3) when questioned, Hewins quickly responded that he did not have any drugs. We conclude that these facts did not provide Officer Cothran with a reasonable suspicion that criminal activity was afoot. An observation that Hewins was nervous, drove through a known drug area, and Hewins's immediate denial of possessing drugs, cannot justify Officer Cothran's decision to detain Hewins. We find the aggregate of these circumstances was not sufficient to create an objective basis for extending the scope of the traffic stop.

Therefore, we hold the continued detention of Hewins, which included the deployment of the drug-detection dog, was illegal and the drugs discovered during the search of the vehicle should have been suppressed. *Cf. Tindall,* 388 S.C. at 523, 698 S.E.2d at 206 (concluding officer's continued detention of defendant exceeded the scope of the traffic stop and constituted a seizure for purposes of the Fourth Amendment where officer ascertained that defendant: (1) was stopped while driving to a "drug hub" city to meet his brother, (2) was driving a rental car rented the previous day by another individual which was to be returned to Atlanta on the day of the stop; (3) did a "felony stretch" on exiting the vehicle; and (4) seemed nervous). *See generally* Thomas Fusco, Annotation, *Permissibility Under Fourth Amendment of Detention of Motorist by Police, Following Lawful Stop for Traffic Offense, to Investigate Matters Not Related to Offense,* 118 A.L.R. Fed. 567, §§ 3–5 (1994 & Supp.2014) (collecting state and federal cases analyzing whether law enforcement had reasonable suspicion of the criminal activity to justify continued detention following the conclusion of the initial traffic stop).[7]

---

7. The State maintains the search was valid and cites *Provet* and *State v. Wallace,* 392 S.C. 47, 707 S.E.2d 451 (Ct.App.2011), *cert. dismissed as improvidently granted,* 401 S.C. 264, 737 S.E.2d 480 (2012) for this position. We, however, find *Provet* and *Wallace* distinguishable as there was considerably more evidence present in those cases to support

## IV. Conclusion

We hold the circuit court judge erred in finding *Snowdon* dispositive as it is factually distinguishable. Moreover, we expand on the ruling in *Snowdon* as there was no consideration given to the significant constitutional and policy issues raised by the State's use of offensive collateral estoppel. As discussed, most jurisdictions have rejected the State's use of this doctrine because it potentially violates a defendant's right to have a jury determine each element of a charged offense. However, we decline to adopt a blanket prohibition of the State's use of offensive collateral estoppel in criminal proceedings given we can conceive of limited circumstances where the doctrine of collateral estoppel would be appropriate. Yet, we caution against its use and emphasize the rarity of its application. Applying this doctrine to the facts of the instant case, we hold that Hewins should not have been precluded from litigating his motion to suppress in circuit court.

Regarding the merits of Hewins's motion to suppress, we find that it should have been granted. Because the evidence does not support a finding that Officer Cothran had reasonable suspicion of criminal activity, the continued detention of Hewins after the completion of the warning citation constituted an illegal detention. Consequently, the drug evidence should have been suppressed. Accordingly, we reverse Hewins's conviction for possession of crack cocaine.

**REVERSED.**

TOAL, C.J., HEARN, J., and Acting Justice JAMES E. MOORE, concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES.

I concur in part and dissent in part. I agree with the majority that the circuit court erred in ruling that Hewins was collaterally estopped from arguing his motion to suppress. However, I respectfully dissent from the majority's holding

---

a finding that the officer had reasonable suspicion of a serious crime to justify the continued detention.

that the motion to suppress should have been granted, as I would not have reached the merits of the suppression motion because it was not ruled on by the lower court.

First, I agree with the majority that collateral estoppel does not apply. However, while the majority distinguishes *Snowdon*,[8] I would go farther and hold that even had the facts of this case been similar to that of *Snowdon*, Hewins would not be collaterally estopped, since none of the requirements for the application for collateral estoppel have been met. Moreover, I share the majority's concern that there may never be an appropriate scenario where the State should be permitted to use offensive collateral estoppel against a criminal defendant. *Cf. Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (allowing *defendant* to assert collateral estoppel to bar litigation of facts that were determined by an acquittal in a previous prosecution).

Second, I disagree with the majority's decision to address the suppression motion on the merits, as it was not ruled on below. In the interest of judicial economy, the majority addresses the merits of the suppression motion, "as the parties did in their briefs and at oral arguments."[9] In my opinion, the concern for judicial economy cannot justify ignoring our precedent requiring an issue be preserved before an appellate court will address the merits of the issue. *See State v. Dunbar*, 356 S.C. 138, 587 S.E.2d 691 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge."). Issues not raised and ruled upon in the trial court will not be considered on appeal. *Id.*

While the merits of the suppression motion were argued by Hewins's counsel, no evidence was presented. The State did not touch on the merits contending only that Hewins was

---

**8.** *State v. Snowdon*, 371 S.C. 331, 638 S.E.2d 91 (Ct.App.2006), *cert. dismissed as improvidently granted*, 381 S.C. 171, 672 S.E.2d 108 (2009).

**9.** I note that the Hewins does not argue the merits of this motion in his brief, but instead responded to the State's argument in his reply brief. It is well settled appellants may not make new arguments for reversal in their reply brief. Additionally, Hewins does not request this Court rule on the merits, but merely requests we remand this case for a ruling on Appellant's motion to suppress.

collaterally estopped from arguing the suppression motion. As the majority notes, the circuit court did not and could not address the merits of Hewins's motion, but held that Hewins was collaterally estopped from challenging the search. As a result, we are presented with a record that is insufficient to determine the merits of this suppression motion. I find it inappropriate for this Court to rule on the merits of a motion when the merits were neither litigated nor ruled on by the lower court. Therefore, I would remand to the circuit court to consider Hewins's suppression motion.