LOCKEMY, C.J.:
**337 In this criminal action, Nathaniel Wright appeals his convictions for voluntary manslaughter, possession of a weapon during the commission of a violent crime, and failure to stop for a blue light. Wright asserts the trial court erred in finding the public defender's office did not have an actual conflict of interest *237 and denying Wright's request for a continuance. We affirm.
FACTS
On October 1, 2014, Wright fatally shot his brother, Maurice Wright, at their mother's home. That afternoon the two began arguing about money each accused the other of owing. The afternoon ended with Maurice dead-shot eight times. After a short police chase, Deputy Leonard Brown arrested Wright, who told him, "I'm not going to let [anyone] disrespect me." The State charged Wright with murder, possession of a weapon during the commission of a violent crime, and failure to stop for a blue light.
Prior to trial, Wright's appointed counsel filed a motion for a continuance as well as a motion to be relieved as counsel. Wright's motion for a continuance centered on evidence that had been produced by the State in the week prior to trial. Specifically, Wright's counsel asserted she had not been given enough time to review medical records, jail house phone calls, or speak with a confidential informant the State indicated it intended to use as a witness. Wright's counsel admitted she intended to listen to the phone calls that evening and the State conceded it did not intend to use the recordings in its case in chief. Wright's counsel also admitted she had the medical records, but had not had an opportunity to review them thoroughly.
With regard to the motion to be relieved, Wright's counsel requested the court relieve her because there was a conflict of interest in the public defender's office. Wright's counsel argued her direct supervisor represented one of the witnesses against her client in obtaining a deal for his testimony against Wright. The conflict did not manifest itself until the State disclosed the witness the week prior to trial. Wright's counsel argued she should not be forced to continue representing Wright against his wishes based on the conflict.
**338 The trial court then took sworn testimony from the Chief Public Defender and Wright's counsel's supervisor. The trial court asked both attorneys whether they discussed the case with Wright's counsel and whether any confidential information was disclosed regarding the two cases. They each testified no confidential information was discussed.
The trial court found, based on Rule 1.10(e) of the South Carolina Rules of Professional Conduct, that no actual conflict of interest was present in this case. The trial court found there had been no confidential information discussed or disclosed between the lawyers representing Wright or the witness. The trial court noted the rules allow for a "Chinese Wall" to screen lawyers in the public defender's office representing competing sides and since the lawyers in this office had not discussed the case, no actual conflict of interest existed.
After the trial court's ruling on the conflict of interest issue, Jared Newman, a private attorney, indicated a family member had retained him to represent Wright. Newman stated he did not believe he had time to review the evidence in this "complex" murder case. The trial court indicated his question to Newman was "what's your role in the case here today? We're going forward. What's your role?" Newman indicated he could serve as co-counsel, but did not believe he could accept the role of lead counsel. The trial court indicated he would allow Newman to act as co-counsel.
During the trial, Newman performed the cross-examination of each of the State's witnesses and performed the direct examination of each of Wright's witnesses. He also presented the closing statement. Wright's appointed counsel only presented the opening statement.
After deliberations, the jury returned guilty verdicts for voluntary manslaughter and the weapons charge. The trial court imposed a sentence of twenty-three years' imprisonment for voluntary manslaughter, five years' imprisonment for the weapons charge, and three years' imprisonment for the failure to stop for a blue light, all to run concurrently. This appeal followed.
STANDARD OF REVIEW
"In criminal cases, the appellate court sits to review errors of law only."
**339 State v. Hewins , 409 S.C. 93, 102, 760 S.E.2d 814, 819 (2014) (quoting State v. Wilson , 345 S.C. 1, 5-6, 545 S.E.2d 827, 829 (2001) ). "We are bound by the trial court's factual findings *238 unless they are clearly erroneous." State v. Wilson , 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001).
CONFLICT OF INTEREST
Subject to certain exceptions, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Rule 1.7, RPC, Rule 407 SCACR. "A concurrent conflict of interest exists if: (1) the representation of one client will be adverse to another client ...." Rule 1.7, RPC, Rule 407 SCACR. Generally, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so" based on a conflict of interest. Rule 1.10(a), RPC, Rule 407 SCACR.
A lawyer representing a client of a public defender office, legal service association, or similar program serving indigent clients shall not be disqualified under this Rule because of the program's representation of another client in the same or substantially related matter if: (1) the lawyer is screened in a timely manner from access to confidential information relating to and from any participation in the representation of the other client; and (2) the lawyer retains authority over the objectives of the representation pursuant to Rule 5.4(c).
Rule 1.10(e), RPC, Rule 407, SCACR.
Wright asserts the trial court erred by not relieving the public defender's office from representing him because the office had an actual conflict of interest. Wright argues his attorney's supervisor represented a witness against him in his trial, and no screening mechanism protected him as required by Rule 1.10(e) of the Rules of Professional Conduct. Wright asserts Rule 1.10(e) therefore imputes a conflict of interest upon his appointed attorney such that she should have been relieved. We disagree.
The situation presented in this case is exactly the circumstances Rule 1.10(e) seeks to avoid. In fact, the Chief Public Defender for the Fourteenth Circuit testified "I have contract attorneys that could have taken this case and everything else **340 had we known some time ago." However, the State did not disclose the witness' identity until the week prior to trial. As a result of this late notice, the public defender's office could not contract with outside counsel or create an adequate screening mechanism to ensure against a possible conflict of interest. While we agree with Wright that an explicit screening mechanism or addition of outside counsel would be the best remedy for this situation, we do not agree that the absence of an explicit screening mechanism creates an incurable conflict of interest such that the public defender's office should have been removed from handling his case.
We read Rule 1.10(e) as providing a way to ensure the public defender's office is not conflicted out, but we do not read it as requiring any specific procedures to ensure the absence of a conflict. The trial court took sworn testimony from both the Chief Public Defender as well as the attorney supervising Wright's counsel. They each testified they did not discuss any particulars of Wright's case with his attorney and they did not discuss anything that would give Wright's attorney any advantage or disadvantage in this case. While we are troubled by the situation, we are confident in the trial court's attempt to ensure no actual conflict existed. Rule 1.10(e) provides a public defender may continue representing a client, even with an imputed conflict of interest, if there is proper screening to prevent the exchange of confidential information. We find the trial court adequately determined no confidential information was disseminated or received by Wright's attorney. Thus, while no member of the office explicitly communicated the need to create a screening mechanism, the testimony indicates such a wall existed in this case. Accordingly, the public defender's office accomplished the purpose of the rule and Wright's attorney did not have to be relieved.
REQUEST FOR CONTINUANCE
"The trial court's denial of a motion for continuance will not be disturbed on appeal absent a clear abuse of discretion." State v. Morris , 376 S.C. 189, 208, 656 S.E.2d 359, 369 (2008).
Wright asserts the trial court erred in failing to grant him a continuance based on his argument the public defender's office *239 should have been conflicted out. As we have already discussed, **341 the trial court properly declined to release the public defender's office, and no continuance was necessary because Wright's attorney had been given adequate time to prepare his defense. Therefore, we can discern no clear abuse of discretion by the trial court to warrant reversal.
CONCLUSION
Accordingly, the orders of the circuit court are
AFFIRMED.
KONDUROS, J., concurs. WILLIAMS, J., concurs in result only.