# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1021

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Joshua Lee Howe, also known as | * | |
| Josh Harris, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: September 16, 2009
Filed: December 28, 2009

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

This case is before us upon remand from the United States Supreme Court for reconsideration in light of Yeager v. United States, 129 S. Ct. 2360 (2009). In our previous decision we affirmed the district court's[1] order denying Joshua Lee Howe's motion to dismiss two counts in his indictment. United States v. Howe, 538 F.3d 820

_____

[1] The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

(8th Cir. 2008), <u>vacated</u>, 129 S. Ct. 2861 (2009) (mem.). We now hold that while <u>Yeager</u> alters our analysis of Howe's appeal, it does not alter our initial holding. We therefore affirm.

## I.    BACKGROUND

### A.    The <u>Howe I</u> Indictment

On October 5, 2005, Howe and his co-defendant, Robert Phillips, were indicted in the Eastern District of Arkansas in <u>United States v. Howe</u> (<u>Howe I</u>) for their alleged involvement in the December 2002 murder of Jeremy Deshon Gaither. The <u>Howe I</u> indictment charged Howe and Phillips each with five counts: (1) conspiracy to commit a robbery and/or kidnapping resulting in felony murder, in violation of 18 U.S.C. § 371; (2) aiding and abetting felony murder predicated on the kidnapping and/or robbery of Gaither, in violation of 18 U.S.C. §§ 111(a) & 2; (3) kidnapping, in violation of 18 U.S.C. §§ 1201(a) & 2; (4) being felons in possession of firearms, in violation of 18 U.S.C. § 922(g)(1); and (5) using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) and (j)(1).

At trial, the government sought to prove that Howe planned the kidnapping and robbery of Gaither and convinced Richard Smith and Phillips to carry out his plan. Gaither's lifeless body was found on the White River National Wildlife Refuge on December 9, 2002. Medical evidence indicated that he died from a gunshot wound.

Smith pled guilty to aiding and abetting in felony murder in connection with Gaither's death, and served as the government's key witness at trial. Smith testified that on December 6, 2002: (1) he, acting in accordance to Howe's plan, lured Gaither into a car under the guise of discussing a potential sale of the car to Gaither; (2) he then picked up Phillips and the two men drove Gaither onto the Refuge at gunpoint, using a gun Howe provided; (3) Phillips robbed Gaither and forced him out of the car;

(4) a struggle ensued, and Phillips shot Gaither in the neck; and (5) Smith and Phillips then fled the scene.

An eyewitness testified that Gaither was last seen in a car driven by Smith on the afternoon of December 6, 2002, but Smith provided the only eyewitness testimony linking either Howe or Phillips to Gaither's death. In fact, Howe's primary defense was that Smith really acted alone, and only concocted a story about Howe's and Phillip's involvement in hopes of receiving a reduced sentence.

On July 25, 2007, the jury acquitted Phillips on all counts. The same jury returned a split verdict as to Howe: the jury acquitted Howe of felony murder and using or carrying a firearm during and in relation to a crime of violence, but convicted him of being a felon in possession of a firearm. The jury failed to reach a verdict with respect to Howe's guilt on the conspiracy and kidnapping counts. The district court accordingly declared a mistrial as to those counts and set a date for Howe's retrial. The government subsequently moved to dismiss the Howe I indictment without prejudice, and the district court granted the motion.

### B.     The Howe II Indictment

On September 5, 2007, the government returned a new indictment against Howe (Howe II). The new indictment charged Howe with several counts, two of which are relevant to this appeal: (1) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c), and (2) kidnapping, in violation of 18 U.S.C. §§ 1201(a)(2) & 2. Howe moved to dismiss this indictment on double jeopardy and collateral estoppel grounds.

In support of his motion to dismiss, Howe made essentially two arguments. First, he maintained that the new conspiracy and kidnapping counts were barred by traditional principles of double jeopardy because they were merely lesser included offenses of the charges brought against him at the first trial. Second, he asserted that

the doctrine of collateral estoppel barred the charges because the jury's acquittals on felony murder and the use and carry offenses indicated that the jury necessarily decided that Howe did not commit kidnapping or conspiracy to kidnap.

The district court denied Howe's motion, ruling that Howe would not be twice placed in jeopardy by, and that the government was not collaterally estopped from pursuing, either count. Howe appealed on both grounds. We initially affirmed. Howe, 538 F.3d at 830. The Supreme Court vacated and remanded for our consideration in light of Yeager. Howe, 129 S. Ct. at 2861. We again affirm.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

We have jurisdiction to review a pretrial order denying a defendant's motion to dismiss an indictment on double jeopardy and collateral estoppel grounds where the defendant has raised a colorable claim.[2] United States v. Bearden, 265 F.3d 732, 734 (8th Cir. 2001). We review a district court's denial of a motion to dismiss an indictment on double jeopardy and collateral estoppel grounds de novo. Id. at 735.

---

[2]The district court found Howe's motion to be frivolous and refused to certify a colorable claim. However, we believe Howe has raised a colorable claim and accordingly, we address the merits. See United States v. Brown, 926 F.2d 779, 781 (8th Cir. 1991) (per curiam).

## B. Traditional Principles of Double Jeopardy

The Double Jeopardy Clause[3] of the Fifth Amendment "embodies two vitally important interests." Yeager, 129 S. Ct. at 2365. The first interest protected by the Clause is captured in what we refer to as the "traditional principles of double jeopardy." The traditional principles of double jeopardy stand for the "deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense." Id. (internal quotations omitted). While the Yeager Court did discuss this first interest, the Court did not alter how we analyze traditional notions of double jeopardy. See id. at 2366 (noting that the question presented to the Court was not whether the first interest had been implicated).

Since we find nothing in Yeager which would require us to review our analysis under traditional notions of double jeopardy, we incorporate our previous double jeopardy analysis here, Howe 538 F.3d at 824-27, and hold that Howe remains in continuing jeopardy for both the offenses of kidnapping and conspiracy to commit kidnapping. See Yeager, 129 S. Ct. at 2366 (noting that "[t]he interest in giving the prosecution one complete opportunity to convict those who have violated its laws justifies treating the jury's inability to reach a verdict as a nonevent that does not bar retrial" (internal quotation omitted)); see also United States v. Holland, 956 F.2d 990, 993 (10th Cir. 1992) (noting that because mistrial does not terminate jeopardy, "government [can] properly reindict and retry defendants on the same charges without offending [traditional] principles of double jeopardy").

---

[3]"[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2.

## C.    Collateral Estoppel

The second interest embodied in the Clause is the "preservation of the finality of judgments." <u>Yeager</u>, 129 S. Ct. at 2366 (internal quotation omitted). We refer to the protection of this second interest under the label "collateral estoppel."[4] <u>United States v. Mitchell</u>, 476 F.3d 539, 544 (8th Cir. 2007). Collateral estoppel "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." <u>Yeager</u>, 129 S. Ct. at 2366. To determine what the jury necessarily decided we "examine the record of a prior proceeding, . . . and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." <u>Ashe v. Swenson</u>, 397 U.S. 436, 444 (1970) (quotation omitted).

Prior to <u>Yeager</u>, we and our sister circuits were split as to whether a hung count was a relevant portion of the record of prior proceeding. <u>Yeager</u>, 129 S. Ct. at 2365 (identifying the dispute, collecting cases). <u>Yeager</u> resolves this dispute by holding that "the consideration of hung counts has no place in the [collateral estoppel] analysis." <u>Id.</u> at 2368. In our initial opinion, we sided with those circuits which considered the hung counts relevant. <u>Howe</u>, 538 F.3d at 828-29 ("Since the jury . . . reached no verdict on the kidnapping count, its acquittal on the felony murder count must have rested on some finding other than the one urged by Howe."). Thus, <u>Yeager</u> requires that we revisit our collateral estoppel analysis without considering the hung conspiracy and kidnapping counts. We now engage in that very analysis.

Howe contends that in order to have acquitted him, the jury necessarily had to determine that he was not involved in the kidnapping of Gaither. Thus, he maintains that the government is collaterally estopped from pursuing the kidnapping and

---

[4]As the <u>Yeager</u> Court notes, this doctrine is sometimes referred to by the more descriptive term "issue preclusion." <u>Yeager</u>, 129 S. Ct. at 2367 n.4.

conspiracy to commit kidnapping charges in Howe II. To succeed on this contention, Howe bears the burden of proof to "show that the verdict in [Howe I] necessarily decided the fact or issue sought to be precluded in [Howe II]." Bearden, 265 F.3d at 735; see also Dowling v. United States, 493 U.S. 342, 350-51 (1990). "To decipher what [this] jury has necessarily decided, we . . . 'examine the record of [Howe I], . . . and conclude whether a rational jury could have grounded its verdict upon an issue other than that which [Howe] seeks to foreclose from consideration.'" Yeager, 129 S. Ct. at 2367 (quoting Ashe, 397 U.S. at 444). If the jury could have rationally based its verdict upon an issue other than finding that Howe did not commit kidnapping and/or conspiracy to commit kidnapping, then the government is not estopped from pursuing the Howe II indictment.

As Yeager instructs, we have reviewed the record of Howe I without considering the jury's hung counts. See Yeager, 129 S. Ct. at 2368. Based on that review, we cannot express with any particularity what the jury decided. As such, it stretches credulity to infer that the jury necessarily decided that Howe was not involved in the kidnapping of Gaither. Certainly, Howe's view of the record provides one potential reason the jury may have decided to acquit. However, our inquiry is not what the jury "could have decided," but rather Howe must prove to us that the jury "necessarily decided" a given issue. See Bearden, 265 F.3d at 735. As discussed below, Howe cannot meet this burden.[5]

---

[5]Neither do we subscribe to the government's view of the evidence. The government would seem to follow the "see what sticks" approach by raising multiple alternate explanations for what the jury "might have decided." For example, the government asserts that the jury could have acquitted if it would have found that Gaither did not die as a result of the robbery or if the jury would have found that Gaither was not killed on federal territory. While these assertions would certainly support an acquittal, we cannot review the evidence with such abstraction. Instead, our inquiry into the evidence "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Ashe, 397 U.S. at 444 (quotation omitted). Doing so reveals that the defendants did not contend, nor would the

## 1. Kidnapping

### a. Felony Murder Acquittal

Howe first argues that his acquittal on the felony murder count estops the government from pursuing the new kidnapping count. Specifically, he argues that because the government charged Howe with felony murder predicated on kidnapping and/or robbery, in order to acquit, the jury must have necessarily determined that Howe did not commit either predicate offense, including kidnapping. We disagree.

Having reviewed the evidence in "a practical frame" and "with an eye to all the circumstances" of the Howe I proceedings, see Ashe, 397 U.S. at 444, we have found at least one alternate explanation for the jury's acquittal on felony murder that would not estop the government from proceeding with the kidnapping count alleged in Howe II. To support this alternate explanation, we turn to the trial judge's instructions to the jury.[6] Yeager 129 S. Ct. at 2368 (indicating that "the questions submitted to the jury for their consideration" constitute a relevant portion of the record of prior proceeding (quotation omitted)). Here the judge instructed the jury that to convict Howe of felony murder predicated on kidnapping and/or robbery, the jury must find beyond

_____

evidence support, a finding that Gaither died as a result of anything but a gunshot after a robbery, or that he died anywhere other than on federal territory.

[6]The judge instructed the jury that the crime of felony murder has three elements all of which must be proven beyond a reasonable doubt:

1. The defendants, aiding and abetting one another, unlawfully caused the death of Gaither.

2. The death of Gaither occurred as a consequence of, and while the defendants were knowingly and willfully engaged in, committing kidnapping and/or robbery; and

3. That such act was committed upon the Refuge.

a reasonable doubt that Gaither's death occurred as a consequence of, and while the defendants were knowingly and willfully engaged in, kidnapping and/or robbing him. The jury's charge, then, involved two steps. First the jury had to decide whether Gaither's death was the consequence of either a robbery or a kidnapping or both. Second, the jury had to decide whether Howe knowingly and willfully engaged in whatever offense or offenses it found responsible for Gaither's death.

Thus, a rational jury could have acquitted Howe of felony murder under the following rationale. First, the jury could have found that Gaither did not die as a consequence of the *kidnapping*, but rather as a consequence of the *robbery*. Second, the jury then could have determined that Howe did not knowingly and willfully participate in that *robbery*. As such, the jury may have acquitted on felony murder without ever passing judgment on whether Howe did or did not participate in the kidnapping.[7] The jury's acquittal on felony murder, therefore, does not estop the government from pursuing the Howe II kidnapping count.

### b. Use or Carry Acquittal

Howe also asserts that the jury's acquittal on using or carrying a firearm in furtherance of a crime of violence predicated on robbery, and/or kidnapping, and/or murder, required the jury to necessarily determine that Howe did not commit kidnapping. We again disagree. An examination of the record reveals that the

---

[7]Howe contends that such a reading of the record is erroneous because neither defendant ever disputed that Gaither died as a consequence of the robbery or kidnapping. We disagree. Our review of the record indicates that Howe's theory at trial was primarily that Smith acted alone or that his account of the ordeal was not to be believed. However, the testimony of Smith supports our reading of how the jury may have rationally viewed the evidence. Smith stated that once he, Phillips, and Gaither arrived at the Refuge that Phillips and Gaither began tussling outside of the vehicle. At that point, Smith believed that the incident "was more serious than what [was] planned."

evidence presented tends to establish that Smith kidnapped Gaither by "inveiglement"or "decoy"–i.e. luring by trickery or temptation under false pretenses. This was committed without the use of a firearm. The government's theory of the case was that Howe provided a gun to Phillips, and that Phillips pulled that gun on Gaither in furtherance of the robbery. In fact, by the time Phillips allegedly arrived on the scene with the gun, the kidnapping by decoy had already occurred. Thus, a rational jury could have acquitted Howe simply because the gun was not used in *furtherance* of the crime of kidnapping. Such a decision would not require the jury to make any determination as to whether Howe participated in any kidnapping. As a result, the jury's acquittal on the use and carry offense also does not estop the government from pursuing the Howe II kidnapping count.[8]

Since the burden is on Howe to establish that the jury necessarily decided in his favor the issue he seeks to foreclose from consideration, we conclude that collateral estoppel does not bar the government from proceeding with the kidnapping count alleged in Howe II.

### 2. Conspiracy to Commit Kidnapping

Howe's next assertion is that by virtue of the acquittals at the first trial, the jury necessarily decided a fact against the government that is essential to a conviction on the Howe II conspiracy count. Howe indicates that the government's theory in Howe I was that Howe's involvement in the charged crimes was solely through his alleged agreement with Phillips and Smith to commit those crimes. As such, Howe contends

---

[8]The jury did convict Howe of possession of a Hi-Standard .22 caliber pistol. However, no particular gun was linked to the crime. Moreover, Howe raised doubts as to whether the bullet that killed Gaither was actually discharged from a Hi-Standard .22 caliber pistol. So, the jury may also have determined that the government simply failed to meet its burden linking the particular gun which it charged Howe with possessing, with the weapon that caused Gaither's death.

that since the first jury acquitted him of felony murder, it must have determined that he never agreed with Smith or Phillips to commit the alleged underlying crimes. Because the government will be required to prove that Howe did knowingly enter an agreement with another to kidnap Gaither to succeed on the new conspiracy count, e.g., 18 U.S.C. § 1201(c), Howe argues that this count too is barred by collateral estoppel.

However, as explained above, the first jury could have acquitted Howe of felony murder and the use and carry offense for reasons that have little or nothing to do with whether the jury believed that Howe entered into an agreement with another to kidnap Gaither. We therefore reject Howe's argument that the first jury's acquittals necessarily encompassed a finding that he never agreed with anyone to kidnap Gaither, and we hold that the conspiracy count alleged in Howe II is not barred by collateral estoppel. See United States v. Baugus, 761 F.2d 506, 509 (8th Cir. 1985).

### 3. Phillips' Acquittals Immaterial

Finally, Howe contends that the jury's acquittals of *Phillips* on all counts in Howe I, including the conspiracy count, bar the government from seeking a successive prosecution on conspiracy against *Howe*.[9] Specifically, Howe contends that the jury,

---

[9]We express serious doubt as to whether the acquittals of a co-defendant who is not charged in the new indictment constitute a valid part of the record of a prior proceeding for purposes of evaluating collateral estoppel. We have considered Howe's assertion here only because we find the acquittals of Phillips to be irrelevant to the subsequent prosecution. However, "an inquiry into what the jury decided . . . should be confined to the points in controversy on the former trial, to the testimony given by the parties, and to the questions submitted to the jury for their consideration." Yeager, 129 S. Ct. at 2368 (internal quotation omitted). If a jury's inability to reach a decision as to Howe "has no place in the [collateral estoppel] analysis," id., then we do not see how a jury's decision as to someone other than Howe has any bearing on what the jury decided with respect to Howe. See, e.g., United States v. Brown, 983

in acquitting Phillips on all counts, necessarily determined that the government did not prove beyond a reasonable doubt that Phillips was involved in any of the charged acts. Accordingly, he argues that the government should be estopped from alleging that those same acts were committed by an "unindicted co-conspirator" (i.e. Phillips) in furtherance of the conspiracy alleged in Howe II.

We find two fatal errors in Howe's assertions. First, several of the overt acts alleged in support of the Howe II conspiracy count only reference Howe and Smith and make no mention of the unindicted co-conspirator. Second, the facts indicate that Smith tricked Gaither into entering the car and that Phillips had no role in that act. The jury may have acquitted Phillips of the kidnapping and conspiracy to commit kidnapping counts not because there was no conspiracy, but simply because Phillips was not involved in any such conspiracy.[10] Because the government can succeed on the new conspiracy count without having to prove that Phillips was even involved in the kidnapping, the jury's acquittal of Phillips on all charges clearly does not estop the government from proceeding with the Howe II conspiracy and kidnapping counts.

---

F.2d 201, 203 (11th Cir. 1993) (noting that "[c]odefendants can be acquitted for different reasons" than defendants); United States v. Bernhardt, 840 F.2d 1441, 1450 (9th Cir. 1988) (noting that a "finding that the evidence against [co-defendants] was insufficient for a rational jury to have found that *they* were involved in conspiracy . . . [did] not render it 'rationally [in]conceivable' that the [defendants] could have been so involved" (second and fifth alterations in original)). Even if that statement is not categorically true of all co-defendants, it certainly is true here where the alleged roles of Howe, Phillips, and Smith were so distinct that the jury's reasonable doubt as to one's guilt cannot infer reasonable doubt as to another.

[10]Howe also avers that Phillips' involvement was so integral to the government's theory of the case that without reproving that involvement, the government cannot establish the execution of Howe's plan. We disagree with this assertion for the previously stated reasons.

### 4.    Summarizing the Alternate Theory

Although Howe has presented one plausible reading of the record and the effect of the jury's acquittals, in light of the above analysis, we believe the following rationale is equally plausible. To be sure, we do not express that this was in fact what the jury decided, but only that it is a plausible rationale for the jury's acquittals. First, the jury may have indeed found that Howe was the mastermind of a conspiracy to kidnap Gaither. Nonetheless, the jury did not believe that Gaither's death occurred as a consequence of that conspiracy or of the actual kidnapping. Second, even though the jury may have believed that Howe was guilty of kidnapping, it did not believe that any weapon was used in furtherance of that kidnapping. Therefore, the jury acquitted him of both the felony murder and the use and carry offenses.

Since the jury may have in fact found that Howe was guilty of kidnapping and conspiracy to commit kidnapping, the government cannot now be estopped from proving that very fact.

"While we take very seriously the prospect of an accused having to run the gauntlet of a criminal trial a second time," United States v. Bordeaux, 121 F.3d 1187, 1192 (8th Cir. 1997), we find no basis in the Double Jeopardy Clause, or in the equitable doctrine of collateral estoppel embodied therein, to bar Howe's retrial for kidnapping and conspiracy, even in light of Yeager.

## III.    CONCLUSION

The decision of the district court is affirmed.

_____

-13-