**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

Maunwell Ervin, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2020-000574

---

## ON WRIT OF CERTIORARI

---

Appeal from Greenwood County
J. Mark Hayes II, Post-Conviction Relief Judge

---

Opinion No. 28128
Submitted May 16, 2022 – Filed January 11, 2023

---

## REVERSED

---

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General David A. Spencer, both of
Columbia, for Petitioner.

Clarence Rauch Wise, of Greenwood, for Respondent.

---

**JUSTICE KITTREDGE:** We issued a writ of certiorari to review the award of post-conviction relief (PCR) to Respondent Maunwell Ervin. Ervin was tried twice for multiple offenses stemming from a search of Ervin's rented residence. The charges ranged from trafficking in cocaine to possession of a firearm. At the first trial, the jury acquitted Ervin of the firearm charge. The jury, however, was unable to reach a verdict on the trafficking charge, and the trial court declared a

mistrial as to that offense. A second jury trial resulted in another mistrial on the trafficking charge after the jury was unable to reach a verdict yet again. Ervin and the State ultimately reached a negotiated plea agreement by reducing the trafficking charge to a lesser offense and imposing the minimum sentence. No direct appeal was taken.

Ervin then filed an application for PCR from his negotiated guilty plea. The PCR court granted relief on Ervin's claim of ineffective assistance of counsel, premised on counsel's failure to raise a double jeopardy objection based on the rule established in *Yeager v. United States*, 557 U.S. 110 (2009). We find the PCR court misapplied *Yeager*, thereby erring in granting Ervin relief. Accordingly, we reverse and reinstate Ervin's negotiated guilty plea and sentence.

## I.

After law enforcement executed a search warrant on Ervin's residence, he was arrested and charged with trafficking in cocaine, trafficking in cocaine within proximity of a school, possession with intent to distribute (PWID) marijuana, PWID marijuana within proximity of a school, and possession of a controlled substance. The search revealed a gun, prompting the State to additionally charge Ervin with possession of a firearm during the commission of a violent crime.[1] Ervin proceeded to trial and was acquitted of the firearm charge, but the trial court declared a mistrial on the drug offenses after the jury was unable to reach a verdict.

Subsequently, the State retried Ervin on the remaining charges, which resulted in convictions for PWID marijuana, PWID marijuana within proximity of a school, and possession of a controlled substance.[2] However, the trial court declared a second mistrial on the trafficking charges following another hung jury. Eventually, Ervin entered a negotiated guilty plea to a lesser trafficking offense and received

---

[1] *See generally* S.C. Code Ann. § 16-23-490 (2015) (outlining the offense of possession of a firearm during the commission of a violent crime); S.C. Code Ann. § 16-1-60 (Supp. 2021) (defining violent crimes to include trafficking in cocaine).

[2] Ervin filed a separate PCR application challenging the convictions that resulted from the second trial. *See Ervin v. State*, Op. No. 2023-MO-003 (S.C. Sup. Ct. filed January 11, 2023).

the mandatory-minimum sentence of seven years' imprisonment.  The proximity trafficking charge was dismissed as a result of the negotiated plea agreement.

Following entry of his guilty plea, Ervin became aware of a potential double jeopardy argument in defense of the trafficking charge.  In response, Ervin filed an application for PCR, alleging counsel was ineffective for failing to file a motion to dismiss the trafficking charge on double jeopardy grounds prior to his second trial and ultimate guilty plea.

At the PCR hearing, Ervin argued the State was prohibited from retrying him on the mistried trafficking charge because the acquittal on the firearm charge triggered the issue preclusion doctrine embodied in the Double Jeopardy Clause.[3]  To support this argument, Ervin cited the *Yeager* decision, in which the United States Supreme Court held "that acquittals can preclude retrial on counts on which the same jury hangs."  557 U.S. at 125.  Ervin's trial counsel acknowledged she became aware of this potential argument prior to the second trial, but after independently researching the issue and consulting with another experienced criminal attorney, trial counsel concluded the double jeopardy argument manifestly lacked merit and, therefore, never presented it to Ervin or raised it to the trial court.

The PCR court granted Ervin relief on the trafficking charge, concluding counsel was deficient for failing to raise a double jeopardy challenge based on the rule established in *Yeager*.  The PCR court found Ervin's prior acquittal on the firearm charge necessarily determined he was not guilty of the underlying trafficking charge.  As a result, the PCR court found Ervin was prejudiced by the deficient representation and dismissed the trafficking charge, finding double jeopardy applied and Ervin was immune from re-prosecution as to that offense.

We granted the State's petition for a writ of certiorari to review the PCR court's decision.

## II.

In order to establish a claim of ineffective assistance of counsel, a PCR applicant must prove his counsel's deficient performance and resulting prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Thus, when challenging a guilty plea, a PCR applicant must show (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for

---

[3] U.S. Const. amend. V; S.C. Const. art. I, § 12.

counsel's errors, the applicant would not have pled guilty. *Smith v. State*, 369 S.C. 135, 138, 631 S.E.2d 260, 261 (2006) (citing *Hill v. Lockhart*, 474 U.S. 52, 56–58 (1985)). "The [applicant] is required to overcome the presumption that counsel was effective in order to receive relief." *Cherry v. State*, 300 S.C. 115, 118, 386 S.E.2d 624, 625 (1989).

"Our standard of review in PCR cases depends on the specific issue before us." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018). Generally, we "will uphold the PCR court's factual findings if there is any evidence of probative value in the record to support them." *Thompson v. State*, 423 S.C. 235, 239, 814 S.E.2d 487, 489 (2018) (citing *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016)). However, "[q]uestions of law are reviewed de novo, and we will reverse the PCR court if its decision is controlled by an error of law." *Frierson v. State*, 423 S.C. 257, 262, 815 S.E.2d 433, 435–36 (2018) (citing *Jamison v. State*, 410 S.C. 456, 465, 765 S.E.2d 123, 127 (2014)).

## III.

The State argues the PCR court erred as a matter of law in granting Ervin's PCR application because *Yeager* is inapplicable, and counsel's performance was not deficient in failing to raise a double jeopardy challenge. We agree with the State that Ervin's claim of ineffective assistance of counsel is manifestly without merit. Trial counsel's determination that *Yeager* did not apply to Ervin's situation was correct.

The Double Jeopardy Clauses of the United States and South Carolina Constitutions prevent the State from making repeated attempts to convict an individual for the same offense. U.S. Const. amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life of limb . . . ."); S.C. Const. art. I, § 12 ("No person shall be subject for the same offense to be twice put in jeopardy of life or liberty . . . ."); *see also Green v. United States*, 355 U.S. 184, 187 (1957) ("[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual . . . ."); *Crist v. Bretz*, 437 U.S. 28, 33 (1978) (providing that, as a matter of equal importance, the Double Jeopardy Clause preserves the finality of judgments). Nonetheless, generally, the Double Jeopardy Clause does not preclude the State from re-prosecuting defendants on mistried counts unless the doctrine of issue preclusion applies. *See United States v. Crabtree*, 878 F.3d 1274, 1281 (11th Cir. 2018).

Issue preclusion "prevents a party from relitigating an issue that was decided in a previous action." *State v. Hewins*, 409 S.C. 93, 106, 760 S.E.2d 814, 821 (2014). Although the doctrine of issue preclusion originated in civil cases, its application has long since been extended to criminal proceedings. *Id.* at 106–07, 760 S.E.2d at 821 (citing *State v. Brown*, 201 S.C. 417, 23 S.E.2d 381 (1942)). As recognized by the United States Supreme Court, issue preclusion in the criminal context is derived from the Double Jeopardy Clause. *Id.* at 107, 760 S.E.2d at 821; *see also Harris v. Washington*, 404 U.S. 55, 56 (1971) (per curiam) ("[Issue preclusion] in criminal trials is an integral part of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments.").

The United States Supreme Court first linked the issue preclusion inquiry to the Double Jeopardy Clause in *Ashe v. Swenson*, 397 U.S. 436 (1970). There, the Supreme Court held that the issue preclusion aspect of the Double Jeopardy Clause precludes the State from relitigating any issue of ultimate fact that was necessarily decided by a jury's verdict of acquittal in a prior trial. *See id.* at 443–45;[4] *cf. Hewins*, 409 S.C. at 107, 760 S.E.2d at 821 ("[A] defendant in a criminal case may assert [issue preclusion] by relying on an acquittal in a first prosecution to bar litigation of those facts in a subsequent prosecution for a different offense."). The Supreme Court explained that the issue preclusion analysis "requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (citation omitted) (internal quotation marks omitted).

Subsequently, in *Yeager*, the Supreme Court applied *Ashe*'s issue preclusion analysis under the Double Jeopardy Clause to a case involving a partial mistrial on certain charges and a partial verdict of acquittal on others. The jury acquitted Yeager of securities and wire fraud (the fraud counts) but failed to reach a verdict

---

[4] In *Ashe*, six poker players were robbed by several masked men. 397 U.S. at 437. Ashe was charged with—and acquitted of—robbing one of the six players. *Id.* at 438–39. The State then attempted to retry Ashe for the robbery of another poker player. *Id.* at 439. Because the sole issue in dispute in the first trial was whether Ashe was one of the masked robbers, the Supreme Court concluded the jury's acquittal precluded the State from trying him again for the robbery of another player during the same incident. *Id.* at 445–47.

on charges of insider trading, and the judge declared a mistrial on the insider trading charges. 557 U.S. at 115. Yeager argued the jury's acquittal of the fraud counts precluded the prosecution from retrying him on insider trading. *Id.* The Supreme Court acknowledged the factual distinction between *Ashe* and *Yeager*: *Ashe* involved a straight acquittal on the single count initially tried, whereas *Yeager* involved an acquittal on some counts and a hung jury on others. *Id.* at 120. Nonetheless, the Supreme Court declared *Ashe*'s reasoning controlled because a jury's inability to reach a verdict on any particular charge is a "nonevent" for double jeopardy purposes. *Id.* Accordingly, the Supreme Court ruled that "if the possession of insider information was a critical issue of ultimate fact in all of the charges against [Yeager], a jury verdict that necessarily decided that issue in his favor protect[ed] him from prosecution for any charge for which that [was] an essential element." *Id.* at 123.

In line with *Ashe* and *Yeager*, we must conduct a two-phase analysis in determining whether issue preclusion bars retrial of a hung count.[5] First, we must identify what issues, if any, the jury necessarily decided by its verdict of acquittal. *See id.* at 119–20. Second, we must examine whether the necessarily-decided issue was an "essential element" of the offense for which the State sought re-prosecution. *See id.* at 123; *see also id.* at 120–22 (noting that an appellate court should not speculate about possible reasons underlying the jury's failure to reach a decision, but instead view the totality of the proceedings through a practical lens); *cf. Hewins*, 409 S.C. at 107, 760 S.E.2d at 821 ("[T]he rule of [issue preclusion] in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." (quoting *Ashe*, 397 U.S. at 444)). "'[T]he burden is on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided' by a prior jury's verdict of acquittal." *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 359 (2016) (internal alteration marks omitted) (quoting *Schiro v. Farley*, 510 U.S. 222, 233 (1994)); *see also Yeager*, 557 U.S. at 122 n.6 ("To preclude retrial, [the defendant] must show that the jury necessarily decided an issue in his favor.").

## IV.

---

[5] *See* E.H. Schopler, Annotation, *Modern status of doctrine of res judicata in criminal cases*, 9 A.L.R.3d 203, 225 (1966) ("Application of the principle of [issue preclusion] in a criminal case has two phases: the first is to determine what the former judgment determined, and the second is to examine how that determination bears on the second case.").

## A.

We first turn to what the jury actually decided when it acquitted Ervin of the firearm charge. Relying on *Yeager*, Ervin argues the jury's not-guilty verdict for possession of a firearm during the commission of a violent crime necessarily included a finding that he was not guilty of the predicate violent crime (trafficking). We disagree.

In order to be convicted for possession of a firearm during the commission of a violent crime, the State must show the defendant had actual or constructive possession of the firearm and establish a nexus between the firearm and the underlying violent crime. *See State v. Whitesides*, 397 S.C. 313, 318–19, 725 S.E.2d 487, 490 (2012) ("[W]e find that the General Assembly's purpose in enacting this statute was to penalize defendants who actually or constructively possess a firearm in order to further a violent crime and who thereby increase the attendant risk of harm. We therefore hold that such a nexus must be established in order to convict a defendant for possessing a firearm during the commission of a violent crime."). Therefore, a jury acquittal for possession of a firearm during the commission of a violent crime could rest on any one of three bases: (1) the defendant did not commit the predicate violent offense; *or* (2) the State failed to prove the defendant possessed the firearm; *or* (3) the State failed to establish the requisite nexus between the firearm and the violent crime. Because these are disjunctive bases on which to acquit, a jury need not decide whether the defendant committed the violent crime should it find the State failed to carry its burden on the second or third elements.

Based on the record before us, we conclude there are a host of self-evident reasons why the firearm charge could have been resolved in Ervin's favor without necessarily impacting the drug-trafficking charge. *See Yeager*, 557 U.S. at 119–20 (explaining issue preclusion does not bar retrial if "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration" (citation omitted)). Merely as one example, Ervin's defense theory at trial was that law enforcement conducted a sloppy investigation, and the items found during the search—including the firearm—belonged to another individual living in the shared residence, not Ervin. Furthering the claims of a slipshod investigation, Ervin's counsel emphasized at trial and in the PCR hearing that although the serial number of the firearm was intact, law enforcement failed to check the database to determine to whom the firearm was registered. Thus, as Ervin himself argued, the jury could have acquitted him of the firearm charge after finding the State failed to prove Ervin was the individual who possessed the firearm found in the rental house.

In truth, a rational jury could have acquitted Ervin on the firearm charge for a number of reasons without ever passing judgment on whether he was the individual who possessed and trafficked the drugs found in the house. That crucial fact is wholly distinct from the situations presented in *Ashe* and *Yeager*, where there was but one issue in dispute on which the jury could have based its acquittal verdict. *See Ashe*, 397 U.S. at 445 ("[T]he record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that [the poker player] had not been a victim of that robbery. The *single rationally conceivable issue in dispute before the jury* was whether the [defendant] had been one of the robbers. And the jury by its verdict found that he had not." (emphasis added)); *Yeager*, 557 U.S. at 116, 126 (accepting as correct the lower court's determination that, because Yeager "did not dispute" part of the Government's theory on the fraud counts, there was only one factual determination the jury could have found when it acquitted Yeager for fraud, and that factual determination was a critical issue of ultimate fact in the hung charges against Yeager); *cf. Crabtree*, 878 F.3d at 1283 (distinguishing the case from *Ashe* and holding issue preclusion did not apply because "there was no single rationally conceivable issue in dispute before the jury when it considered the [acquitted] charges" (internal quotation marks omitted)).

Accordingly, Ervin has not demonstrated that the issue he seeks to foreclose from relitigation "was actually decided by [the] prior jury's verdict of acquittal." *Bravo-Fernandez*, 137 S. Ct. at 359 (quoting *Schiro*, 510 U.S. at 233) (internal quotation marks omitted). He merely alleges, without substantiation, that the jury's verdict of acquittal on the firearm charge necessarily decided he was also not guilty of drug trafficking. Ervin's position is untenable. Particularly in light of the factual circumstances surrounding the firearm charge, the jury's acquittal verdict established only that the jury did not find beyond a reasonable doubt that Ervin possessed a firearm during the commission of a violent crime. The mere *possibility* that the jury *may* have determined Ervin did not commit a violent crime did not prevent the relitigation of that issue in a later trial; that possibility in no way rose to the *necessarily*-decided threshold set forth in *Ashe* and *Yeager*. *See United States v. Haines*, 485 F.2d 564, 565 (7th Cir. 1973) ("Unless the record of the prior proceeding affirmatively demonstrates that an issue involved in the second trial was definitely determined in the former trial, the possibility that it may have been does not prevent the relitigation of that issue." (citing *Adams v. United States*, 287 F.2d 701, 705 (5th Cir. 1961)); *United States v. Howe*, 590 F.3d 552, 557 (8th Cir. 2009) (applying *Yeager* and stating that "our inquiry is not what the jury 'could have decided,' but rather [the defendant] must prove to us that the jury 'necessarily decided' a given issue"); *Crabtree*, 878 F.3d at 1284 ("We reiterate that

our task is to determine, objectively and in a practical frame, what facts a rational jury *must* necessarily have decided in producing a verdict. We are not to speculate as to the actual source of a verdict, nor to foreclose from relitigation all factual issues which *theoretically* could have been involved in an acquittal." (emphasis added) (citations omitted) (internal quotation marks omitted)).

## B.

Though we find Ervin failed to meet his burden in the first phase of the issue preclusion analysis,[6] we further note that Ervin fails the second phase of the analysis as well, as his acquittal on the firearm charge did not foreclose any element necessary for a trafficking conviction.[7] The trafficking statute does not even mention possessing a weapon, much less require possession of a weapon as an element of the offense. *See* S.C. Code Ann. § 44-53-375(C). Thus, the jury's acquittal on the firearm charge is not dispositive of whether Ervin possessed or trafficked in drugs. *Cf. State v. Henley*, 428 S.C. 649, 659–60, 837 S.E.2d 639, 644 (Ct. App. 2019) ("Here, [the defendant's] acquittal for larceny . . . is not dispositive of whether the State could satisfy the elements necessary for a first degree burglary conviction. In *Yeager*, there could be no insider trading if, as found by the jury, there had been no fraud. But an acquittal for larceny does not

---

[6] *Cf.* Schopler, *supra* note 5, at 225 (noting the analysis often ends at the first phase: "The first phase presents the greatest difficulties. In numerous cases the courts have declined to apply the principle of [issue preclusion], not because they were reluctant to apply it, but because they were unable to ascertain the [specific] basis upon which a general verdict of not guilty was reached by a jury." (footnote omitted)).

[7] *Compare* S.C. Code Ann. § 16-23-490(A) ("If a person is in possession of a firearm or visibly displays what appears to be a firearm . . . during the commission of a violent crime and is convicted of committing or attempting to commit a violent crime . . . , he must be imprisoned five years, in addition to the punishment provided for the principal crime."), *with* S.C. Code. Ann. § 44-53-375(C) (2018) ("A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of ten grams or more of . . . cocaine base . . . is guilty of a felony which is known as 'trafficking in . . . cocaine base' . . . .").

foreclose any element necessary for a first degree burglary conviction.").[8]

We flatly reject the notion that a not guilty verdict on the firearm charge precluded Ervin's retrial on the trafficking offense. As a matter of law, Ervin finds no refuge in *Yeager*.

## V.

As evidenced by our analysis above, trial counsel was correct in concluding a double jeopardy claim lacked merit under these facts. Of course, no attorney is obligated to raise a meritless defense. *See Butler v. State*, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985) ("The proper measure of counsel's performance remains whether he has provided representation within the range of competence required of attorneys in criminal cases."); 15 S.C. Jur. *Appeal and Error* § 88 (Supp. 2021–2022) ("Appellate counsel is not deficient for failure to raise [a] legally meritless claim on appeal.").

Moreover, the record shows trial counsel clearly considered the issue, consulted with other attorneys, and ultimately concluded *Yeager* did not apply to Ervin's case. During the PCR hearing, trial counsel highlighted law enforcement's failure to run the firearm's serial number and stated, "based on that fact . . . , it was [her] opinion that [] double jeopardy wouldn't extend because the basic factual circumstances [of the charges] were not as similar." Trial counsel also pointed out that, in her experience, a defendant "absolutely" could "traffic drugs without using a gun." Because trial counsel's conduct here was not deficient, the PCR court erred in finding counsel improperly failed to move for dismissal on double jeopardy grounds.

---

[8] *But cf. State v. Smith*, 430 S.C. 226, 230 n.4, 845 S.E.2d 495, 497 n.4 (2020) (recognizing the inverse is true: a defendant must be "[]convicted of committing a violent crime before he can properly be found to have illegally possessed a weapon during that crime").

## VI.

Based on the foregoing, we conclude trial counsel correctly determined that no double jeopardy violation occurred under *Yeager*. We therefore hold the PCR court erred in finding counsel's performance deficient and granting PCR. We reverse and reinstate Ervin's guilty plea and negotiated sentence.

**REVERSED.**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**