24-3229-bk
*In re: Ditech Holding Corp.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of December, two thousand twenty-five.

PRESENT:
> DENNIS JACOBS,
> JOSEPH F. BIANCO,
> > *Circuit Judges*,
> VICTOR A. BOLDEN,
> > *District Judge.*[*]

---

IN RE: DITECH HOLDING CORPORATION,

*Debtor*.

---

KEVIN G. SNYDER, THE ESTATE OF MARY S. SNYDER,

*Appellants*,

v.                                             24-3229-bk

CONSUMER CLAIMS TRUSTEE,

*Appellee*.

---

[*] Judge Victor A. Bolden, United States District Judge for the District of Connecticut, sitting by designation.

FOR APPELLANTS:                                 JASON SCOTT LUCK, Bennettsville, South
                                                Carolina.

FOR APPELLEE:                                   RICHARD B. LEVIN, Jenner & Block LLP, New
                                                York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jessica G. L. Clarke, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on November 8, 2024, is **AFFIRMED**.

Appellants Kevin G. Snyder and the Estate of Mary S. Snyder ("Snyder") appeal from the district court's judgment, which affirmed a bankruptcy court order disallowing and expunging Snyder's claim for $300,000 against Ditech Holding Corporation ("Ditech") in a Chapter 11 bankruptcy proceeding. The bankruptcy court and the district court both concluded that the causes of action supporting Snyder's claim were either barred by collateral estoppel or failed to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2023 WL 7381500 (Bankr. S.D.N.Y. Nov. 7, 2023) ("*Ditech I*"); *In re Ditech Holding Corp.*, No. 23-cv-10254 (JGLC), 2024 WL 4707911 (S.D.N.Y. Nov. 7, 2024) ("*Ditech II*"). On appeal before this Court, Snyder primarily argues that it was error to apply collateral estoppel, and that he has stated plausible claims for (1) civil compensatory contempt, (2) breach of contract, (3) a violation of the Real Estate Settlement Procedures Act ("RESPA"), and (4) a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer to only as necessary to explain our decision to affirm.

## BACKGROUND

In 1989, the Snyders purchased a home located at 1752 Orange Grove Shores Drive in

Charleston, South Carolina. To finance the purchase, Kevin Snyder executed a promissory note secured by a mortgage, which was refinanced in 2005. BAC Home Loans Servicing, L.P. ("BAC")—a legal predecessor to Ditech—acted as the servicer on the refinanced loan. In 2010, after the Snyders fell behind on their mortgage payments, BAC filed a petition for foreclosure in South Carolina state court. In this state court foreclosure action, Snyder asserted the following counterclaims against BAC: (1) a claim for civil compensatory contempt due to violations of South Carolina Supreme Court Administrative Order 2011-05-02-01 (the "Administrative Order")[1] for, *inter alia*, failure to make a good faith effort to evaluate the Snyders for foreclosure intervention; (2) breach of contract for failing to notify the Snyders of an assignment of the mortgage and for violating the implied covenant of good faith and fair dealing; (3) a violation of SCUTPA for breaches of the Administrative Order, RESPA, and S.C. Code § 37-10-102(a) (the "Attorney Preference Statute")[2]; and (4) quiet title. Snyder's counterclaims sought both monetary and non-monetary relief.

In 2013, the Master-in-Equity[3] in state court stayed the state foreclosure action pending foreclosure intervention, which continued for the next four years. In the meantime, several corporations succeeded BAC, with Ditech serving as the current servicer of the loan. On February 11, 2019, Ditech filed for Chapter 11 bankruptcy. On March 1, 2019, Ditech filed a Notice of

---

[1] *See In re Mortg. Foreclosure Actions*, 720 S.E.2d 908 (S.C. 2011), *decision rescinded sub nom. Re Rescission of Admin. Ords. Governing Mortg. Foreclosure Actions*, 899 S.E.2d 596 (S.C. 2023).

[2] The Attorney Preference Statute provides that "[t]he creditor must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction . . . and comply with such preference." S.C. CODE ANN. § 37-10-102(a).

[3] As the district court noted, "Masters-in-Equity are a part of South Carolina's unified judicial system, and, upon referral, have the power and authority of a South Carolina Circuit Court sitting without a jury." *Ditech II*, 2024 WL 4707911, at *2 n.1 (citing S.C. CODE ANN. § 14-11-10 *et seq.* (2024)).

Bankruptcy Filing and Imposition of Automatic Stay in the state foreclosure action. However, the stay contained an exception for proceedings seeking to defend or enjoin any foreclosure, and therefore Snyder and Ditech filed cross-motions for summary judgment on the non-monetary portions of their respective claims and counterclaims. The Master-in-Equity ruled in Ditech's favor, ordered the foreclosure of the mortgage, and made various findings of fact and conclusions of law, including that Ditech and its predecessors had "acted in good faith and [have] complied with . . . the Administrative Order[.]" Joint App'x at 816.

On January 2, 2020, the parties executed a Stipulation of Dismissal in the state foreclosure action, which dismissed with prejudice Snyder's remaining claims, but purported to preserve his monetary claims in the ongoing bankruptcy proceedings with the following language: "This stipulation is made without prejudice to, and specifically preserving [Snyder's] claim in the pending bankruptcy[.]" Joint App'x at 829.

On July 20, 2022, the South Carolina Court of Appeals affirmed the Master-in-Equity's rulings, *see Ditech Fin., LLC v. Snyder*, No. 2019-000575, 2022 WL 2826359 (S.C. Ct. App. July 20, 2022), and the South Carolina Supreme Court subsequently denied Snyder's petition for a writ of certiorari.

In the bankruptcy proceeding, Snyder asserted an unliquidated and unsecured claim against Ditech for $300,000, citing his counterclaims in the then-ongoing litigation in South Carolina state court as the basis for the claim. The Consumer Claims Trustee objected to Snyder's claim because "[t]he trial court's findings preclude further relief on the issues presented[,]" and it "fail[ed] to state an affirmative claim for which relief may be granted." Joint App'x at 353.

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate Snyder's claim at $300,000 for the purpose of setting a reserve. In response, Snyder argued, *inter alia*, that

4

his claim should be given administrative expense priority and that the reserve should be set at $400,000.

On November 7, 2023, the bankruptcy court entered an order disallowing and expunging Snyder's claim. The bankruptcy court concluded, *inter alia*, that: (1) the doctrine of collateral estoppel barred Snyder from asserting any claims premised on alleged violations of the Administrative Order; (2) Snyder failed to state a claim for breach of contract or a breach of the implied covenant of good faith and fair dealing; (3) the SCUTPA claim failed as a matter of law and there was no plausible underlying violation of RESPA or the Attorney Preference Statute; (4) the claim was not non-dischargeable; and (5) the claim was not entitled to administrative expense priority.[4] *Ditech I*, 2023 WL 7381500, at *9–14. Snyder appealed to the district court.

On November 7, 2024, the district court affirmed, concluding, *inter alia*, that: (1) the state courts' determination that Ditech and its predecessors did not violate the Administrative Order and acted in good faith has collateral estoppel effect; (2) the civil compensatory contempt claim and the portions of the breach of contract and SCUTPA claims premised on violations of the Administrative Order or bad faith conduct by Ditech therefore necessarily fail; (3) the remaining portions of the breach of contract claim and the SCUTPA claim fail to state a plausible claim for relief; (4) Snyder forfeited his argument for recovery under RESPA because he raised it for the first time before the district court; (5) any amendment to assert administrative priority was futile; and (6) no reserve amount applies.[5] *Ditech II*, 2024 WL 4707911, at *3. This appeal followed.

---

[4] Because the bankruptcy court disallowed and expunged the claim, it did not address the estimation motion.

[5] The district court also concluded that any claim that Ditech violated the FDCPA by contacting the Snyders rather than their attorneys after being notified of their representation by counsel is barred by the applicable statute of limitations. *See Ditech II*, 2024 WL 4707911, at *8. Snyder does not challenge that determination on appeal.

5

**DISCUSSION**

"[T]he rulings of a district court acting as an appellate court in a bankruptcy case are subject to plenary review. In other words, [w]hen reviewing a bankruptcy court decision that was subsequently appealed to a district court, we review the bankruptcy court's decision independent of the district court's review." *In re Belton v. GE Cap. Retail Bank*, 961 F.3d 612, 614 (2d Cir. 2020) (internal quotation marks and citations omitted). "In so doing, we review the bankruptcy court's legal conclusions *de novo*." *Id.* The standard of review of a bankruptcy court's disallowance of a claim at a sufficiency hearing is the same as the Rule 12(b)(6) standard. *See* Fed. R. Bankr. P. 7012(b).

**I.      Collateral Estoppel**

"To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000). Under South Carolina law, "[t]he party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *State v. Hewins*, 760 S.E.2d 814, 821 (S.C. 2014) (internal quotation marks and citation omitted).

On *de novo* review, we agree with the bankruptcy court and the district court that Snyder was properly barred by collateral estoppel from contesting whether Ditech violated the Administrative Order or acted in bad faith. Each requirement for collateral estoppel has been met. First, the issue was actually litigated. In moving for summary judgment in the state foreclosure action, Snyder argued that Ditech and its predecessors repeatedly violated the Administrative Order by, *inter alia*, acting in bad faith. Second, the issue was directly determined. The Master-in-Equity concluded at summary judgment that Ditech and its predecessors have "acted in good

6

faith and [have] complied with the provisions of the Administrative Order," Joint App'x at 816, and the South Carolina Court of Appeals affirmed that holding. Third, the state courts' findings were necessary to support the prior judgment because a finding of compliance with the Administrative Order was a prerequisite to foreclosure of Snyder's property, which the Master-in-Equity ordered.

Snyder's arguments to the contrary are unpersuasive. For example, Snyder asserts that collateral estoppel does not apply because the South Carolina courts adjudicated his request for non-monetary relief, while he sought monetary relief from the bankruptcy court. However, "[c]ollateral estoppel . . . prevents a party from relitigating an *issue* that was decided in a previous action, regardless of whether the claims in the first and subsequent lawsuits are the same." *Carolina Renewal, Inc. v. S.C. Dep't of Transp.*, 684 S.E.2d 779, 782 (S.C. Ct. App. 2009) (emphasis added).

Snyder also argues that Ditech has waived any collateral estoppel defense because the parties' stipulation in the foreclosure action "specifically preserv[ed]" Snyder's claims in the bankruptcy proceeding. Joint App'x at 829. We disagree. As the district court correctly concluded, the stipulation is, at most, a preservation of a particular *claim* in bankruptcy court such that res judicata (or "claim preclusion") could arguably not operate to defeat it, but nothing in the stipulation prevented Ditech from arguing (and the courts below from accepting) that Snyder was collaterally estopped from relitigating the *issue* of whether Ditech and its predecessors violated the Administrative Order or acted in bad faith.[6] *See Ditech II*, 2024 WL 4707911, at *5.

Nor does the Restatement (Second) of Judgments—which South Carolina follows in this

---

[6] The bankruptcy court did not "dishonor" the stipulation as Snyder argues, and therefore there is no basis to apply the narrow exception to collateral estoppel in South Carolina law that applies "when unfairness or injustice results[.]" *State v. Bacote*, 503 S.E.2d 161, 163 (S.C. 1998).

context, *see Bacote*, 503 S.E.2d at 163—command a different result. The Restatement provides that collateral estoppel should not apply if there are "differences in the quality or extensiveness of the procedures followed in the two courts or [because of] factors relating to the allocation of jurisdiction between them[.]" *Id.* at 163 (quoting Restatement (Second) of Judgments § 28(3) (1982)). Snyder has not pointed to any differences in the quality or extensiveness of the procedures followed by the South Carolina courts and the bankruptcy court, and we discern none from the record. Nor are there any factors with respect to the allocation of jurisdiction that preclude application of collateral estoppel here. As the Restatement recognizes, the exception applies where

> the legislative allocation of jurisdiction among the courts of the state [has] been designed to insure that when an action is brought to determine a particular issue directly, it may only be maintained in a court having special competence to deal with it. In such instances, after a court has incident[al]ly determined an issue that it lacks jurisdiction to determine directly, the determination should not be binding when a second action is brought in a court having such jurisdiction.

Restatement (Second) of Judgments § 28 cmt. d (1982). Here, the South Carolina state courts had jurisdiction to determine (and were required to determine directly) whether Ditech and its successors violated the Administrative Order or acted in bad faith. Therefore, this exception does not apply.

In sum, Snyder was collaterally estopped from relitigating the South Carolina courts' determination that Ditech and its predecessors had not violated the Administrative Order and acted in good faith. Accordingly, the bankruptcy court properly sustained the Consumer Claims Trustee's objection to the causes of action in Snyder's claim before the bankruptcy court that were premised on such a violation—namely, (1) civil compensatory contempt; (2) breach of contract premised on a breach of the implied covenant of good faith and fair dealing; and (3) a violation of SCUTPA premised on alleged non-compliance with the Administrative Order.

## II. Remaining Causes of Action

Snyder's claim in bankruptcy court also asserted causes of action that were not dependent on a violation of the Administrative Order: (1) breach of contract of the note and mortgage; and (2) violations of SCUTPA premised on Ditech's alleged failure to comply with the Attorney Preference Statute and RESPA. *See Ditech I*, 2023 WL 7381500, at *7. We agree with the bankruptcy court and district court that these claims were implausible.

With respect to the breach of contract claim, Snyder argued before the bankruptcy court that Ditech and its predecessors breached the mortgage contract by failing to notify Snyder of an assignment of the mortgage. As the bankruptcy court correctly noted, however, Snyder did "not refer to any specific assignment or explain why any alleged failure of notification would be a breach of the mortgage contract" and thus his claim was not plausibly pled.[7] *Ditech I*, 2023 WL 7381500, at *12; *see also Ditech II*, 2024 WL 4707911, at *6 ("Snyder does not allege how the failure to notify Snyder of an assignment of the mortgage constitutes a breach of contract, particularly a breach by Ditech.").

Snyder also argues that Ditech and its predecessors engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" in violation of SCUTPA, S.C. CODE ANN. § 39-5-20(a), by violating the Attorney Preference Statute and RESPA. However, Snyder does not plausibly allege a violation of either statute.

The Attorney Preference Statute requires a creditor to "ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction . . . and comply with such

---

[7] Before this Court, Snyder asserts for the first time that Ditech and its predecessors breached the mortgage contract because of unreasonable delays in the foreclosure process and notice defects. Because "[a]n argument raised for the first time on appeal is typically forfeited[,]" we decline to address these newly asserted arguments. *Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 68 (2d Cir. 2010).

preference." S.C. CODE ANN. § 37-10-102(a). Snyder claims that Ditech's predecessors failed to ascertain Mary Snyder's attorney preference, but, as the Master-in-Equity determined in the foreclosure action, Mary Snyder was not a "borrower" within the meaning of the statute because she was not a co-signer on the relevant promissory note. To the extent Snyder asks this Court to second-guess the Master-in-Equity's interpretation of the Attorney Preference Statute, we decline to do so in accordance with the "[b]asic principle[] of federalism . . . that the controlling interpretation of the relevant statute be given by state, rather than federal, courts because a federal court risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." *E. Fork Funding LLC v. U.S. Bank, Nat'l Ass'n as Tr. for Greenpoint Mortg. Funding Tr. Mortg. Pass-Through Certificates, Series 2006-AR6*, 118 F.4th 488, 497 (2d Cir. 2024) (internal quotation marks and citation omitted).

Next, in the state court foreclosure action and before the bankruptcy court, Snyder contended that Ditech and its predecessors violated RESPA by failing to provide a "Servicing Disclosure Statement" as required by 12 U.S.C. § 2605(a). As the bankruptcy court correctly noted, however, 12 U.S.C. § 2605(a) requires the *originator* of the mortgage loan to provide the statement, not the servicer (Ditech and its predecessors). *See Ditech I*, 2023 WL 7381500, at *13. Before the district court, Snyder articulated a new theory of a RESPA violation, namely, that Ditech and its predecessors delayed the resolution of the state court foreclosure action by years and took years to respond to qualified written requests and requests for information. *See Ditech II*, 2024 WL 4707911 at *8. The district court declined to consider these forfeited arguments. *Id.* at *9. Snyder continues to press these forfeited arguments before this Court, but we, like the district court, decline to consider them. *See Katel Ltd. Liab. Co.*, 607 F.3d at 68.

In any event, to the extent Snyder asserts that the alleged violations of the Attorney

Preference Statute and RESPA are acts that violate SCUTPA, SCUTPA is not violated if the claim seeks to "redress a private wrong where the public interest is unaffected." *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d 347, 350 (S.C. Ct. App. 1986). We agree with the district court and bankruptcy court that Snyder has not plausibly alleged any such public impact.[8] *See Ditech I*, 2023 WL 7381500, at *12; *Ditech II*, 2024 WL 4707911, at *7–8.

In sum, Snyder has not plausibly alleged a breach of contract of the note and mortgage or violations of SCUTPA premised on Ditech's alleged failure to comply with the Attorney Preference Statute or RESPA. Because Snyder's claim did not contain any plausible causes of action, the bankruptcy court did not err in disallowing and expunging Snyder's claim.[9]

\* \* \*

We have considered Snyder's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[8] Thus, Snyder's theory of a RESPA violation fails whether it is considered as a subsidiary violation of SCUTPA (as he asserted in the state court foreclosure action), or as a standalone cause of action (as he appears to assert before this Court).

[9] Snyder also argues that the bankruptcy court abused its discretion by denying his oral request to amend his claim to assert administrative priority. We conclude that leave to amend was properly denied because any attempt to amend his claim on that ground would be futile. *See Ditech I*, 2023 WL 7381500, at *14; *Ditech II*, 2024 WL 4707911, at *9–10. Similarly, Snyder's request to estimate the value of his claim as $400,000 or more is moot because we conclude that the bankruptcy court properly determined that his claim should be disallowed and expunged in its entirety.

11